LINER ET AL. *v.* JAFCO, INC., ET AL.

No. 43. Argued November 21, 1963.—Decided January 6, 1964.

*S. Del Fuston* argued the cause for petitioners. With him on the brief was *H. G. B. King.*

*John A. Chambliss, Jr.* argued the cause for respondents. With him on the brief was *James F. Corn.*

Mr. Justice Brennan delivered the opinion of the Court.

The Chattanooga Building Trades Council, AFL, is composed of 17 building trades unions, including Hod-Carriers Building and Common Laborers' Union of America and its Local 846, two of the petitioners. Respondent Rea Construction Company, a large North Carolina building contractor, was engaged by respondent Jafco, Inc., as general contractor to erect a shopping center on a site in Cleveland, Tennessee. Rea operated an open shop, and workers on the project were paid lower wages than the union scale. The Council authorized the Hod-Carriers to place a single picket at the site in protest. The petitioner Liner, carrying a sign which read "Rea Construction Co., not under contract with Chattanooga Building Trades Council, A. F. of L.," began peaceful picketing on August 8, 1960. Construction workers on the job promptly ceased work. On the same day respondent Jafco, Inc., sought an *ex parte* injunction against the picketing from the Tennessee Chancery Court, which ordered the injunction to issue upon the execution and filing of an injunction bond. See 5 Tenn. Code Ann., 1955, § 23–1901. The next day, August 9, Jafco filed a bond providing that, if the injunction action failed, Jafco "shall well and truly pay and satisfy the said [petitioners] all such costs, damages, interest, and other sums

as may be awarded and recovered against the said Jafco, Inc. in any suit or suits which may be hereafter broyght [*sic*] for wrongfully suing out said Injunction . . . ." Thereupon the *ex parte* injunction issued,[1] the picketing ceased in compliance with it, and work on the project was resumed.

The petitioners moved promptly in the Chancery Court to dissolve the injunction on the ground that the state court was without jurisdiction to adjudicate the controversy because the subject matter of the picketing was exclusively within the cognizance of the National Labor Relations Board. The motion was denied on September 29 by an order which recited, "There is no bona fide labor dispute between the parties in this litigation and therefore the state court has jurisdiction of the matter and the same has not [been] preempted by the National Labor Relations Board."[2] Following a hearing, the injunction was made permanent by a final decree entered on June 16, 1961. Petitioners appealed to the Court of Appeals of Tennessee, Eastern Section, which affirmed on January 12, 1962. The opinion, not officially reported, is reported in 49 L. R. R. M. 2585. Pending decision on the appeal, construction at the site had been completed. Noting this fact, the court stated, "In the first

---

[1] The respondent Rea Construction Company was added as a party complainant by an amended and supplemental bill filed August 10, 1960.

[2] In its opinion on making the injunction perpetual, the trial court also found "that the erection of the shopping center does not involve Interstate Commerce. It is a localized action and by no definition of the term can it be said that this operation amounts to Interstate Commerce." The respondents do not support this finding in this Court. The proof was that, before the hearing, Rea Construction Company purchased outside Tennessee and brought to the site materials costing $147,099.67. This meets the direct inflow standards set by the National Labor Relations Board for the exercise of its jurisdiction. See 23 N. L. R. B. Ann. Rep. 8 (1958).

place the questions in this case have become moot." However, the court went on to say, "Further, we concur with the Chancellor's finding that a bona fide labor dispute did not exist." 49 L. R. R. M., at 2587. The Supreme Court of Tennessee, by an unreported order, denied certiorari. We brought the case here, 371 U. S. 961, to consider the validity of the injunction in light of our decision in *Local 438, Construction Laborers* v. *Curry,* 371 U. S. 542. We hold that the issuance of the injunction was beyond the power of the Tennessee courts and therefore reverse the judgment.

We must first consider respondents' challenge to our jurisdiction to review the Tennessee courts' rejection of the petitioners' federal preemption claim. The argument is that we are bound by the state appellate court's holding that this case was rendered moot by the completion of construction. We think, however, that in this case the question of mootness is itself a question of federal law upon which we must pronounce final judgment. *Love* v. *Griffith,* 266 U. S. 32. In that case a Texas trial court dismissed a suit to enjoin the enforcement of an allegedly unconstitutional rule which barred Negroes from voting in a single Houston Democratic primary election. An appeal from the dismissal was in turn dismissed by the Texas Court of Civil Appeals on the ground that, since the election was, at that time, long since passed, the cause of action had ceased to exist. This Court, speaking through Mr. Justice Holmes, implicitly denied that the state court's finding of mootness precluded our independent determination of that question, saying,

> "When as here there is a plain assertion of federal rights in the lower court, local rules as to how far it shall be reviewed on appeal do not necessarily prevail. *Davis* v. *Wechsler,* 263 U. S. 22, 24. Whether the right was denied or not given due recognition by the Court of Civil Appeals is a question as to which

the plaintiffs are entitled to invoke our judgment. *Ward* v. *Love County,* 253 U. S. 17, 22." 266 U. S., at 33–34.

The Court did not, however, think that the action of the Texas Court of Civil Appeals prejudiced the appellants' constitutional rights. Since the election had been held, any order reversing the trial court and ordering the injunction to issue would have been futile; an injunction could not at that date redress the alleged constitutional injury. The Court said:

"If the case stood here as it stood before the court of first instance it would present a grave question of constitutional law and we should be astute to avoid hindrances in the way of taking it up. But that is not the situation. The rule promulgated by the Democratic Executive Committee was for a single election only that had taken place long before the decision of the Appellate Court. No constitutional rights of the plaintiffs in error were infringed by holding that the cause of action had ceased to exist. The bill was for an injunction that could not be granted at that time. There was no constitutional obligation to extend the remedy beyond what was prayed." 266 U. S., at 34.

In contrast, the prejudice to the petitioners from the action of the Tennessee Court of Appeals in affirming the injunction which did issue in the instant case is clear. The petitioners plainly have "a substantial stake in the judgment . . . ," *Fiswick* v. *United States,* 329 U. S. 211, 222, which exists apart from and is unaffected by the completion of construction. Their interest derives from the undertaking of respondent Jafco, Inc., in the injunction bond to indemnify them in damages if the injunction was "wrongfully" sued out. Whether the injunction was wrongfully sued out turns solely upon

the answer to the federal question which the petitioners have pressed from the beginning. If the answer of the Tennessee Court of Appeals to that question may not be challenged here, the petitioners have no recourse against Jafco on the bond. Thus, unlike *Love* v. *Griffith, supra,* the federal issues remain of operative importance to the parties as they come to this Court; here it may be said that the Tennessee courts have in substance and effect denied a federal right, and the completion of construction cannot be deemed a hindrance to our review of the federal question. This is not a case where this Court's decision on the merits of that question "cannot affect the rights of the litigants in the case before it." *St. Pierre* v. *United States,* 319 U. S. 41, 42.[3]

Moreover, this is particularly a case in which "we should be astute to avoid hindrances in the way of taking" up that question. Despite the completion of construction, our superintendence of a state court injunction against conduct alleged to be cognizable exclusively by the National Labor Relations Board is desirable "if the danger of state interference with national policy is to be averted," *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, 245. This controversy involves the fundamental question of whether the Tennessee courts had any power whatever to adjudicate the dispute between the parties. Congress has invested the National Labor Relations Board with the exclusive power to adjudicate conduct arguably protected or prohibited by the National Labor Relations Act. *San Diego Building Trades Council* v. *Garmon, supra.* If the peaceful picketing com-

---

[3] Our lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy. See Diamond, Federal Jurisdiction to Decide Moot Cases, 94 U. of Pa. L. Rev. 125 (1946); Note, 103. U. of Pa. L. Rev. 772 (1955).

plained of in this case is such conduct, Congress has ordained—to further uniform regulation and to avoid the inconsistencies which would result from the application of disparate state remedies—that only the federal agency shall deal with it. *Weber* v. *Anheuser-Busch, Inc.*, 348 U. S. 468. The issuance of the state injunction in this case tended to frustrate this federal policy. This would be true even if the picketing were prohibited conduct. For although the National Labor Relations Board is not barred from granting appropriate remedies by the fact that the challenged conduct has ceased, *Labor Board* v. *Mexia Textile Mills, Inc.*, 339 U. S. 563, or that the construction has been completed, *Local 74, Carpenters Union* v. *Labor Board*, 341 U. S. 707, charges of unfair labor practices must be filed within six months of their occurrence,[4] and an employer armed with a state injunction would have no incentive to initiate Board proceedings. It would encourage such interference with the federal agency's exclusive jurisdiction if a state court's holding of mootness based on the chance event of completion of construction barred this Court's review of the state court's adverse decision on the claim of federal preemption.[5] We have given significant weight to the vital importance of preventing state injunctions from frustrating federal

---

[4] 29 U. S. C. § 160 (b).

[5] The petitioners sought to advance the hearing and decision of their appeal to the Tennessee Court of Appeals. The court said, 49 L. R. R. M., at 2587: "The [petitioners] in brief filed June 22nd, 1961, in which they were seeking to advance the cause for hearing, stated:

" 'In the instant case, the right of picketing will become moot by August 1, 1961, as the construction will be completed and the building ready for occupancy. Appellants know that they desire to picket one of the complainants, Rea Construction Company, this coming fall on a project which will require approximately six or eight months of construction. Without judicial review of this case they can only expect the same Trial Court to act the same, and again they cannot possibly get the case to the appellate court for a decision within that time.' "

labor policy in situations which the Congress has ordained shall be dealt with exclusively by the Board. In *Construction Laborers* v. *Curry, supra,* we considered whether a state court temporary injunction in a labor dispute should be considered to be a final judgment for purposes of our review under 28 U. S. C. § 1257. We held that the temporary injunction should be deemed a final judgment "particularly when postponing review would seriously erode the national labor policy requiring the subject matter of respondents' cause to be heard by the National Labor Relations Board, not by the state courts," and said further, "The truth is that authorizing the issuance of a temporary injunction, as is frequently true of temporary injunctions in labor disputes, may effectively dispose of petitioner's rights and render entirely illusory his right to review here as well as his right to a hearing before the Labor Board." 371 U. S., at 550.

In *Sola Electric Co.* v. *Jefferson Electric Co.,* 317 U. S. 173, a patent licensee defended against a suit for unpaid royalties by attacking the validity under the Sherman Act of a price-fixing stipulation in his license. The lower courts held that having accepted the license with the price-fixing stipulation, the licensee was estopped to deny the validity of the stipulation. This Court reversed. The question presented was "whether the doctrine of estoppel as invoked below is so in conflict with the Sherman Act's prohibition of price-fixing that this Court may resolve the question even though its conclusion be contrary to that of a state court." 317 U. S., at 175. We held that local rules of estoppel would not be permitted to thwart the purposes of statutes of the United States. We said, 317 U. S., at 176:

> "It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules. In such a case our decision is not controlled

by *Erie R. Co.* v. *Tompkins,* 304 U. S. 64. There we followed state law because it was the law to be applied in the federal courts. But the doctrine of that case is inapplicable to those areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law. . . . When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. To the federal statute and policy, conflicting state law and policy must yield. Constitution, Art. VI, cl. 2; . . ."

If in *Sola* a state substantive rule of law had to yield to the federal statute and policy, even more so here—where the claim is that the federal statute and policy oust state courts of any power whatever to deal with the conduct in question—local rules which purport to preclude state appellate court adjudication of the federal preemption claim cannot conclusively render the case moot for the purposes of this Court's review.

We turn then to the merits. Our discussion need not be extended, for in our view the case is squarely governed by our decision in *Construction Laborers* v. *Curry, supra.* Whether or not the facts showed a "labor dispute" within the meaning of 29 U. S. C. § 152 (9)[6] is certainly at least

---

[6] "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

arguable. Consequently, as we said in *Curry*, "the state court had no jurisdiction to issue an injunction or to adjudicate this controversy, which lay within the exclusive powers of the National Labor Relations Board." 371 U. S., at 546–547.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*