ALLEN, Acting Chief Judge.
The appellant seeks review, by way of interlocutory appeal, of orders of the Circuit Court of Broward County granting an injunction against appellant, and denying its motion for dissolution.
The appellee, Meekins, Inc., filed a complaint .seeking an ex parte injunction against the appellant’s picketing of certain job sites where the appellee had contracts to sell and deliver its concrete products. The complaint alleged that the appellant union picketed these sites with signs stating that appellee paid its engineer employees sub-standard wages, and as a result of this picketing, appellee was unable to complete deliveries of its products because of the refusal of the employees of appellee’s customers to handle appellee’s concrete products while the picketing continued. The complaint further alleged that the appellee was a party to a collective bargaining agreement with Local 290, of the International Brotherhood of the Teamsters, which covered part of its employees; that the appellant union did not represent any of ap-pellee’s employees; and that no effort had been made on the part of the appellant to-negotiate on the matter of representing ap-pellee’s employees. No allegation was made-concerning violence or mass picketing.
A temporary restraining order issued and the appellant immediately filed its motion to dissolve, alleging as a ground therefor, that the court was without jurisdiction over the subject matter, because the subject matter of the action was exclusively within the cognizance of the National Labor Relations Board. In support of the motion, appellant attempted to show that the appellee was sufficiently engaged in interstate commerce to come within the jurisdictional ambit of the Board, and that the allegations of the complaint charged appellant with engaging in activities either protected or prohibited by the National Labor Relations-Act, as amended, 29 U.S.C. §§ 151 se seq.. The motion was denied, and this appeal followed.
It would serve no useful purpose to-launch into a lengthy discourse on the matter of federal pre-emption in the field of labor-management relations. It has been> eleven years since Garner v. Teamsters C & H Local Union) 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953), ten years since Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955), and six years-since San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The general principle-ultimately evolving out of this line of cases-is that states must yield to the exclusive-jurisdiction of the National Labor Relations Board when the union activity complained of is arguably protected or prohibited by the National Labor Relations-Act, as amended. San Diego Building Trades Council v. Garmon, supra.
*61 It is abundantly clear now, excluding, of course, situations falling within the provisions of Sections 10(a) and 14(c), 29 U.S.C. §§ 160(a), 164(c), that the effect of this broad principle is to bar states from enjoining peaceful picketing that “affects” interstate commerce. As already noted, the complaint contained no allegations of en masse picketing or violence; therefore, the first element existed that would make the pre-emption doctrine operative.
The chancellor, nevertheless, concluded that the doctrine was not applicable because the facts did not reveal a “labor dispute,” and the absence of such an element precluded the exercise of Board jurisdiction. In support of this reasoning, appellee cites us to the recent case of N. L. R. B. v. International Longshoremen’s Ass’n, 332 F.2d 992 (4th Cir. 1964), wherein the Circuit Court of Appeals, Fourth Circuit, held that there can be no jurisdiction of the Board when the complaint does not present a controversy that constitutes a “labor dispute” within the meaning of the Act.
We have no quarrel with this holding, but it is not relevant to the issue of jurisdiction in the instant case. Although it seems to us that “labor dispute” and “conduct protected and prohibited” are not mutually exclusive concepts, it is undeniable that in the ordinary sequence of determinations leading up to the Board’s exercise of its jurisdiction over a labor-management controversy, the issue of a “labor dispute” comes first. Assuming, however, a situation in which the facts do not give rise to a “labor dispute,” as defined by the Act, what forum is to make this determination in the first instance ?
Under the decision in Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964), the answer is that “labor dispute” like “conduct protected or prohibited” is a determination to be left to the Board in the first instance. The Board decision is then, as in the Longshoremen case, supra, subject to review by the appropriate federal appellate court pursuant to Section 10(c) and (f), 29 U.S.C. § 160(c), (f).
The facts in the Liner case included the picketing of a construction site in protest against wages that were lower than union-scale. The holding was that a state court has no jurisdiction to grant injunctive relief if it is arguable that a particular controversy constitutes a “labor dispute” under the Act. See also Local 675, Int’l Union of Operating Eng’rs v. Acme Concrete Corp., Fla.App.1964, 168 So.2d 697, in which our sister Court of Appeal, Third District, confronted with the identical factual situation that is before us, held that the union conduct constituted activity conceivably regulated by the Act, and therefore pre-empted.
We turn now to the matter of whether the appellee, Meekins, Inc., is an enterprise that meets the jurisdictional standards of the Board.
Section 164(c) (1), 29 U.S.C., vests in the Board discretionary authority to decline to assert jurisdiction over,
“ * * * any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdic- - tion.”
Pursuant to this authority, the Board has adopted certain jurisdictional yardsticks to guide it in the exercise of its jurisdiction. In non-retaíl businesses, jurisdiction will be asserted if the yearly outflow or inflow across state lines, whether “direct” or “indirect,” is $50,000. Siemons Mailing Service 122 N.L.R.B. 81 (1958). In the Siemons case, the Board stated:
“* * * por fhe purposes of applying this standard, direct outflow refers to goods shipped or services furnished by the employer outside the State. Indirect outflow refers to sales *62 of goods or services to users meeting any of the Board’s jurisdictional standards except the indirect outflow or indirect inflow standard. Direct inflow refers to goods or services furnished directly to the employer from outside the State in which the employer is located. Indirect inflow refers to the purchase of goods or services which •originated outside the employer’s State hut which he purchased from a seller within the State who received such goods or services from outside the State. In applying this standard, the Board will adhere to its past practice of adding direct and indirect outflow, or direct and indirect inflow. It will not add outflow and inflow.” At 85.
The appellee asserts that there is nothing in the record of this cause to show that it had a direct inflow or outflow of goods in the amount of $50,000, or more, in the past year. Appellee states that the appellant was apparently satisfied that appellee met the Board’s jurisdictional standards after appellee stipulated to the effect that it had purchased, during the last year, more than ■$50,000 worth of goods that originated outside of the State of Florida. Appellee argues, however, that the stipulation does not •contain sufficient facts to satisfy the Board’s “indirect flow” standard. It maintains that under the Siemons case, supra, it must be shown that the seller within the ■state, from whom the purchases were made, received the goods directly from out of state.
The appellant concedes that the record does not show conclusively that appellee’s purchases were directly from out of Florida •or from sellers within the state who themselves received the goods directly from out •of state. Appellant urges, in effect, however, that the totality of the evidence presented clearly indicates that Meekins is involved in interstate commerce within the meaning of the Act.
We agree with appellant that there is every indication that Meekins engages in interstate commerce, but the record before us is inadequate for such a determination on our part.
In addition to the aforementioned stipulation, appellant relies on the following to establish Meekins’ engagement in interstate commerce: (1) A complaint filed by Meek-ins, in 1962, which alleged an annual purchase of goods outside Florida in excess of $50,000; (2) Purchases made by the general contractors at the construction sites of materials allegedly not manufactured in Florida totalling over $100,000.
With respect to the 1962 bill of complaint: Obviously said complaint does not establish facts going to the nature of Meek-ins’ business activities in the year immediately preceding the institution of this action on October 30, 1964. Concerning the purchases of the general contractors: In instances involving picketing at construction job sites, the Board has used the total indirect inflow of out-of-state goods of all contractors at the site to reach its $50,000 requirement. While the record establishes that these purchases did exceed the $50,000 requirement, it again fails to show that the in-state suppliers did in fact receive the goods from out of the state.
Consequently, we have no alternative but to affirm.
Affirmed.
SHANNON and WHITE, JJ., concur.