**ASSOCIATED GENERAL CONTRACTORS OF MINNESOTA, a Minnesota Corporation, et al., Appellees,**

**v.**

**INTERNATIONAL UNION OF OPERATING ENGINEERS TWIN CITY LOCAL NO. 49, a labor union, Appellant.**

Nos. 74–1273, 74–1334.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1974.

Decided July 29, 1975.

Stephen D. Gordon, St. Paul, Minn., for appellants.

Larry A. Hanson, St. Paul, Minn., for appellees.

Rebuttal was made by Samuel I. Sigel, Minneapolis, Minn.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,[*] and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

In these consolidated appeals, defendant labor unions appeal from an injunction decree ordering the parties to arbitrate their differences in accordance with existing collective bargaining agreements and restraining defendants from participating in, condoning, sanctioning, or otherwise authorizing or approving the work stoppage at the construction site for the Kenneth G. Parker Elementary School in Elk River, Minnesota. We affirm the order of the District Court. The following facts are relevant:

The work at the construction site had been contracted to three companies: Gunnar I. Johnson & Son, Inc., general contractor; Gorham Co., Inc., prime mechanical contractor; and Design Electric, Inc., prime electrical contractor. Each of the contractors hired members of various labor unions to perform the jobs at the site.[1] Design Electric was the only one of the contractors which had hired workers not affiliated with the AFL–CIO. Design paid its electricians approximately $3.00 per hour less than the wages and benefits paid to electricians represented by Local 110, International Brotherhood of Electrical Workers, AFL–CIO (IBEW). On October 24, 1973, Local 110, IBEW, began picketing the Elk River job site to publicize that the electrical work at the project was being performed at substandard wages and benefits.[2] After consultation with their respective business representatives, the other trade union workers at the site, hired by Johnson and by Gorham, honored the Local 110 banners and a work stoppage ensued.[3] Ultimately the gener-

---

[*] Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

[1] Johnson hired workers belonging to the Construction and General Laborers Local No. 563, AFL–CIO; Bricklayers and Stone Masons Union Local No. 2, AFL–CIO; and the International Union of Operating Engineers Local No. 49, AFL–CIO. Gorham hired members of the Plumbers Union Local No. 15, AFL–CIO. Design Electric hired workers affiliated with the Christian Laborers Association Local No. 84.

[2] The banners read:

Notice
to the Public
Electrical Work Being
Performed on This Job
Is at Substandard
Wages & Benefits
By Design Elec.
This Notice Is for Information
of the Public and Is Not Intended
to Cause Any Person to Refuse
to Pick Up or Deliver or to
Perform Any Service
IBEW L. U. # 110

[3] In an effort to minimize the work stoppage, Johnson posted at the east and west ends of the construction site signs intended to create separate gates for the employees and suppliers of Johnson and Gorham, on the one hand, and those of Design Electric, on the other. See Sailors' Union of the Pacific (Moore Dry Dock Co.), 92 NLRB 547, 27 LRRM 1108 (1950). Nonetheless, only a few employees returned to work.

al contractor's job superintendent was forced to inform the workers that the job site was being closed down.

On March 1, 1974, Johnson, Gorham, and the Associated General Contractors of Minnesota, which represents various Minnesota contractors including Johnson in their contracts with construction trade unions, petitioned the United States District Court for the District of Minnesota for an order preliminarily enjoining the work stoppage pending arbitration. Judge Devitt found that Johnson's contracts with the general construction unions at the site contained express no-strike and no work stoppage clauses and that Gorham's contract with the plumbing union contained an implied no-strike, no work stoppage provision. Concluding that the case was controlled by *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), Judge Devitt granted the relief sought. The defendant unions were enjoined from continuing the work stoppage, and the parties were ordered to "arbitrate their differences in accordance with the collective bargaining agreements." The issue in dispute was whether the work stoppage violated the no-strike provisions or whether the sympathy strike in support of IBEW was protected activity under the clause in each contract affording individual employees the right to honor a union picket line.

Following the arbitration proceedings held in accordance with the District Court's order, the arbitrator found that the sympathy strike had been the product of individual choice on the part of each employee and could not be characterized as concerted activity. He therefore concluded that it was protected activity under each collective bargaining agreement and that it did not violate any of the contractual no-strike clauses. The unions have brought this appeal challenging the propriety of the injunction granted below and seeking dissolution thereof. At our request, they have submitted supplemental briefs on whether the completion of the arbitration proceedings and the subsequent removal of

the IBEW banners from the construction site render this case moot.

## I.

### Mootness

Following the decision of the arbitrator on June 5, 1974, the picket line banners were removed, and at the time of this appeal, the employees had returned to work.

The usual rule in federal cases is that an actual controversy must exist at all stages of review, and not simply at the date the action is initiated. *Doe v. Poelker*, 497 F.2d 1063, 1067 (8th Cir. 1974); see *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 406, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

In this case, however, the plaintiff contractors were required to post as a condition of the injunction a $1,000 indemnity bond securing losses, expenses and damages of defendant unions. The decision of the arbitrator favorable to the unions did not render the plaintiffs liable under their bond, however; liability was conditioned upon whether the injunction had been wrongfully obtained in the first instance. Under such circumstances, the Supreme Court has held that the existence of the bond precludes the case from becoming moot. *Liner v. Jafco, Inc.*, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). In that case, Jafco, a general contractor, had been required to file a bond as a condition for obtaining injunctive relief in state court against picketing at its construction site. The bond was to cover any damages that might arise in the event that the injunction had been wrongfully sued out. The injunction was granted, and while an appeal challenging the propriety of the injunction was pending, the construction site was completed. After noting that mootness is a question of federal law, the Court said that the petitioners (labor unions) would be prejudiced by an affirmance based on the would-be mootness of the case. The Court continued:

> The petitioners plainly have 'a substantial stake in the judgment   . .,' *Fiswick v. United States*, 329 U.S. 211,

222 [67 S.Ct. 224, 230, 91 L.Ed. 196], which exists apart from and is unaffected by the completion of construction. Their interest derives from the undertaking of respondent Jafco, Inc., in the injunction bond to indemnify them in damages if the injunction was 'wrongfully' sued out. Whether the injunction was wrongfully sued out turns solely upon the answer to the federal question which the petitioners have pressed from the beginning.

375 U.S. at 305–06, 84 S.Ct. at 394. Accord, NAPA Pittsburgh, Inc. v. Automotive Chauffeurs Local 926, 502 F.2d 321, 322 n. 1 (3rd Cir.), cert. denied, 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974). We therefore must address the merits of this appeal.

## II.

■ Each of the collective bargaining agreements executed by the companies and the unions contained clauses either specifying that refusal to pass through a lawfully permitted picket line would not constitute a violation of the agreement or providing that the employers could not request nonsupervisory employees to go through a picket line except to protect life or property. The Johnson Agreements contained no-strike provisions, as well as provisions for binding arbitration of "all disputes or problems affecting this Agreement." While the Gorham agreement did not contain an express no-strike clause, it provided for binding arbitration of "[a]ny dispute or controversy arising over the interpretation of or adherence to the terms and provisions of this agreement."[4]

4. Where a collective bargaining agreement provides for binding arbitration of disputes thereunder, the courts will find an implied coterminous no-strike clause as the quid pro quo for the company's agreement to submit to arbitration. Gateway Coal Co. v. UMW, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); Teamsters Local 174 v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Judge Devitt's finding is not clearly erroneous.

5. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are

In Valmac Industries v. Food Handlers Local 425, 519 F.2d 263 (8th Cir. 1975), decided today, we held that where a collective bargaining agreement provides for binding arbitration of disputes and contains a no-strike provision together with a clause protecting the right of union members to honor an authorized picket line, the establishment of a picket line resulting in a work stoppage presents an arbitrable dispute with respect to the interpretation of the contract. We further held that such a work stoppage could be enjoined pending arbitration providing the equitable prerequisites set forth in Boys Markets were likewise established.[5] Valmac controls the decision in this case.

The District Court applied the appropriate standard. It concluded as follows:

\* \* \* \* \* \*

2. All disputes between the parties as to the interpretation and application of or adherence to the terms and provisions of the collective bargaining agreements in force are subject to compulsory arbitration under the collective bargaining agreements. The question of the rights and obligations of the union and its members to refuse to work on the project while a banner is maintained thereon is a question which the parties are contractually bound to arbitrate.

3. The work stoppage and strike has and will result in irreparable injury to Plaintiffs; the Plaintiffs will suffer more from the denial of an injunction then Defendants will suffer from a granting of an injunction.

occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

Boys Markets, Inc. v. Retail Clerks Local 770, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970), quoting Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 228, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962) (Brennan, J., dissenting).

4. A preliminary injunction should issue enjoining the work stoppage or strike on the project pending arbitration and directing the parties to proceed to arbitration.

We find substantial evidence upon the record to support the findings of the District Court.[6] There was no abuse of discretion in the grant of injunctive relief.

Affirmed.

---

6. Appellants contend that counsel for appellees stipulated there was no dispute to be arbitrated. A sympathy strike presents a problem in semantics because until the moment of the work stoppage there may indeed be no dispute. The dispute arose when the parties reached differing conclusions with respect to interpretation of the several clauses in the collective bargaining agreements upon which each relied. In *Valmac Industries v. Food Handlers Local 425,* 519 F.2d 263 (8th Cir. 1975), decided this day, we rejected the argument that a *Boys Markets* injunction was lawful only if issued in connection with a dispute entirely separate from a resulting work stoppage.