**AMERICAN SPRING WIRE CORP., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**and**

**Companhia Siderurgica Belgo-Mineira, Intervenor.**

**Court No. 82–11–01579.**

United States Court of International Trade.

Aug. 24, 1983.

Eugene L. Stewart, Terence P. Stewart and Kathleen T. Weaver, Washington, D.C., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Velta A. Melnbrencis, New York City, on brief), for defendant.

Wald, Harkrader & Ross (Christopher Dunn and Arthur J. Lafave III, Washington, D.C., on briefs), for intervenor Companhia Siderurgica Belgo-Mineira.

*Opinion and Order*

MALETZ, Senior Judge:

This action contests various aspects of a suspension agreement entered into between the Department of Commerce, International Trade Administration (ITA), and the government of Brazil pursuant to section

704 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1671c (Supp. IV 1980). Four months after this action was filed, the U.S. International Trade Commission (ITC) made a determination that no industry in the United States was either suffering or threatened with material injury as a consequence of the subsidies which were the raison d'etre of the suspension agreement. *See* 48 Fed.Reg. 12,143 (1983). By operation of law the suspension agreement became null and void *ipso facto.*[1] *See* S.Rep. No. 249, 96th Cong., 1st Sess. 54 (1979), *reprinted in* 1979 U.S.Code Cong. & Ad. News 381, 440 ("If the final determination by the ITC ... in a continued investigation is negative, then the agreement would be void ..."). Intervenor Companhia Siderurgica Belgo-Mineira, joined by the government, has now moved for a dismissal of plaintiffs' complaint based on mootness.

For the reasons that follow, the court agrees that this action is moot. Accordingly, the motion to dismiss is granted.

By way of background, on March 4, 1982 plaintiffs American Spring Wire Corp., Florida Wire & Cable Co. and Shinko Wire America, Inc. filed a petition with the ITA, pursuant to 19 U.S.C. § 1671a(b), alleging that subsidies were being provided to manufacturers, producers or exporters of prestressed concrete steel wire strand from Brazil, and that imports of this merchandise were a cause or threat of material injury to a domestic industry in the United States. On August 2, 1982, the ITA issued a preliminary affirmative subsidy determination. 47 Fed.Reg. 34,609. On October 15, 1982, the governments of Brazil and the United States signed a suspension agreement—the subject of this action—under which the countervailing duty investigation was suspended and suspension of liquidation of customs duties was terminated in return for Brazil's agreement to place an export tax on wire strand exported to the United States. It was agreed that the export tax would be equal to the amount of the net subsidy found by the ITA to exist for this product. 47 Fed.Reg. 47,048 (1982). On November 19, 1982, plaintiffs filed this action, contesting the legality of that agreement.

Despite this suspension agreement, plaintiffs elected to press on with their administrative attack. To that end, pursuant to 19 U.S.C. § 1671c(g),[2] they requested a continuation of the countervailing duty investigation. Complying with this request the ITA issued a final affirmative determination on January 26, 1982. 48 Fed.Reg. 4,516. However, on March 23, 1983, the ITC made a final negative injury determination which, as previously indicated, rendered nugatory the suspension agreement. Intervenor thereupon filed its present motion which the government joined.

All of the parties acknowledge the constitutional dimension of the mootness doctrine. *See, e.g., Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964). In order to satisfy the "case or controversy" clause of Article III there must exist "a present, live controversy ... to avoid advisory opinions on abstract propositions of law." *Tennessee Gas Pipeline Co. v. FPC,* 606 F.2d 1373, 1379 (D.C.Cir.1979) ("no jurisdiction over suits challenging administrative orders which are moot"). In the present case, there is no such controversy since the subject of the action—the suspension agreement—has expired by operation of law. If the court were to render an opinion on the legality of various aspects of the suspension agreement, it would be rendering an opinion that

---

1. 19 U.S.C. § 1671c(f)(3)(A) provides in part:
   If ... the Commission continue[s] an investigation in which an agreement has been accepted ..., then—
   (A) if the final determination by ... the Commission ... is negative, the agreement shall have no force or effect ....

2. That section provides in part:

If the administering authority [the ITA], within 20 days after the date of publication of the notice of suspension of an investigation, receives a request for the continuation of the investigation from—
   *   *   *   *   *   *
   (2) an interested party ...,
then the administering authority and the Commission shall continue the investigation.

is merely advisory. And it is well-nigh aphoristic that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Since the suspension agreement is no longer in effect, such an opinion would have no impact on the current interests of the parties to this litigation. In this sense, the controversy is not one "admitting of specific relief through a decree of a conclusive character, ..." *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

It is true that in another action pending in this court, *see American Spring Wire Corp. v. United States,* Court No. 83–3–00455, plaintiffs have challenged the ITC's no-injury determination—the event which terminated the suspension agreement. However, no disposition of that determination by this court could possibly breathe new life into the suspension agreement. The ITC's no-injury finding sounded the death knell of that agreement; this court lacks power to resurrect it under the circumstances presented here. Plaintiffs' contention that the suspension agreement would be revived should they successfully challenge the ITC's negative injury determination is pure surmise. Straying into a prediction of future events is no substitute for showing an actual controversy, or even one that is likely to recur. "[S]uch speculative contingencies afford no basis for our passing on the substantive issues [plaintiffs] would have [the court] decide." *Hall v. Beals,* 396 U.S. 45, 49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969).

Plaintiffs argue that this action fits into that narrow exception carved out of the mootness doctrine—an action "capable of repetition, yet evading review." *See, e.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Plaintiffs apparently contend that the nature of suspension agreements is such that their formal legal effect will be typically shortlived. The court finds this argument meritless.

Suspension agreements, as clearly contemplated under the Trade Agreements Act of 1979, will generally be of long duration, unless pretermitted by a continued investigation in which either no subsidy or no injury is found to exist. *See, e.g.,* 19 U.S.C. § 1671c(d)(1), which calls for effective monitoring of suspension agreements by the United States, and 19 U.S.C. § 1675, providing for administrative review of such agreements no sooner than two years after they are first published. An interested party who wishes to challenge such an agreement will thus rarely find itself faced with a situation where the agreement has evaded judicial review. If the procedures of the ITA at issue here remain unchanged, there is no reason to suppose that a subsequent case attacking those procedures will not come with relative speed to this court.

In sum, the controversy among the parties has clearly ceased to be "definite and concrete" and no longer "touch[es] the legal relations of parties having adverse legal interests." *Haworth,* 300 U.S. at 240–41, 57 S.Ct. at 464. This case, therefore, in no way presents "the *exceptional* situation ... which might permit a departure from '[t]he usual rule in federal cases ... that an actual controversy must exist [at the judicial review stage], and not simply at the date the action is initiated.'" *DeFunis v. Odegaard,* 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974), *quoting Roe v. Wade,* 410 U.S. at 125, 93 S.Ct. at 713 (emphasis added).

Because the suspension agreement is null and void, the court concludes that it cannot, consistently with the limitations of Article III, consider the issues tendered by plaintiffs. Accordingly, the motion to dismiss plaintiffs' complaint is granted and the action is dismissed.