In re WAL–MART REAL ESTATE
BUSINESS TRUST, Appellant,

v.

BEDFORD SQUARE ASSOCIATES,
LP and Kroger Limited Partnership
I, Appellees.

Kroger Limited Partnership
I, Appellant,

v.

Bedford Square Associates,
LP, Appellee.

Nos. CIV.A. 00–4875, CIV.A. 00–4876,
CIV.A. 00–2678, CIV.A. 00–MC–
174.
Bankruptcy No. 99–35512.

United States District Court,
E.D. Pennsylvania.

March 20, 2001.

Leslie Beth Baskin, Spector, Gadon and Rosen, P.C., Philadelphia, PA, Max W. Hittle, Mark R. Wenzel, Kreig Devault Alexander & Capehart, LLP, Indianapolis, IN, Robert H. Kwait, Spector Godon & Rosen P.C., Philadelphia, PA, for Bedford Square Associates, LP.

Alan I Moldoff, Robert J. Lenahan, Adelman, Lavine, Gold and Levine, Philadelphia, PA, for Wal–Mart Real Estate Business Trust.

Robert M. Greenbaum, Jeremy W. Ryan, Saul, Ewing, Remick & Saul LLP, Philadelphia, PA, for Kroger Limited Partnership I.

Michael Migliaccio, Philadelphia, PA, for New York Life Ins. and Annuity Corp.

Frederic Baker, Office of the United States Trustee, Philadelphia, PA, United States Trustee, pro se.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the court are three separate appeals from three separate orders entered by the Bankruptcy Court, as well as an amended petition for writ of mandamus. This court has jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a) and over the amended petition for writ of mandamus pursuant to 28 U.C.C. § 1651.

This entire matter revolves around attempts to sell first a portion and then an entire shopping center (the "Property") owned by debtor, Bedford Square Associates, LP ("Bedford Square"), to two different buyers, Wal–Mart Real Estate Trust ("Wal–Mart") and Kroger Limited Partnership I ("Kroger"), under two separate agreements of sale, at two separate times.

Wal–Mart first entered into an agreement of sale with Bedford Square to purchase a portion of the Property ("the Wal–Mart Agreement"). This sale was approved by the Bankruptcy Court ("Wal–Mart Sale Order"). Kroger appealed the order. Several months later, and in light of the fact that the sale of a portion of the Property to Wal–Mart had not been consummated, Kroger and Bedford Square executed an agreement of sale to purchase the entire property ("the Kroger Agreement"). Faced with competing agreements of sale, the Bankruptcy Court ordered the Property to be auctioned. In connection with the auction, the Bankruptcy Court issued a procedural order ("the Procedures Order") outlining the ground rules for the auction. At the auction, Kroger made the highest and best offer for the Property and the sale was confirmed by the Bankruptcy Court ("the Kroger Sale Order"). Wal–Mart has appealed the Procedures Order and the Kroger Sale Order. Wal–Mart has also filed a petition for writ of mandamus which essentially makes the same arguments advanced in its appeals of the Procedures Order and the Kroger Sale Order. It is the confirmation of the sale of the Property to Kroger, i.e., the Kroger Sale Order, that Wal–Mart seeks to undo by its appeals and the petition for writ of mandamus.

Wal–Mart argues that at the time the Bankruptcy Court issued the Procedures Order and the Kroger Sale Order, it had no jurisdiction to do so because the appeal by Kroger of the Wal–Mart Sale Order, i.e., the first order approving the sale of a portion of the Property to Wal–Mart, had divested the Bankruptcy Court of jurisdiction. Consequently, Wal–Mart asserts that since the Bankruptcy Court was without jurisdiction when it entered the Procedures Order and the Kroger Sale Order, the Procedures Order and the Kroger Sale Order are nullities.

Bedford Square and Kroger counter that Wal–Mart's appeals are moot under 11 U.S.C. § 363(m) ("Section 363(m)") because the Property was sold to Kroger, a good faith purchaser, and Wal Mart failed to obtain a stay of the sale. Bedford Square and Kroger further assert that Kroger's appeal of the Wal–Mart Sale Order did not divest the Bankruptcy Court of

jurisdiction because the appeal became moot prior to the Bankruptcy Court entering the Procedures Order and the Kroger Sale Order, and, therefore, jurisdiction had revested in the Bankruptcy Court before it entered the Procedures Order and the Kroger Sale Order.

Because the three appeals and the amended petition for writ of mandamus are all interrelated, and the disposition of the Kroger Sale Order effectively determines the disposition of all the other matters, the entire controversy is ripe for resolution. For the reasons that follow, the court dismisses as moot Wal–Mart's appeals of the Procedures Order and the Kroger Sale Order. Furthermore, the court dismisses as moot Kroger's appeal of the Wal–Mart Sale Order approving sale of a portion of the Property to Wal–Mart. Finally, the court dismisses as moot Wal–Mart's amended petition for writ of mandamus. In light of these rulings, the sale of the Property to Kroger pursuant to the Kroger Sale Order will be allowed to stand.

## I. STANDARD OF REVIEW

"[T]he findings of fact made by the bankruptcy court may be reversed only for clear error." *In re Nelson Co.,* 959 F.2d 1260, 1263 (3d Cir.1992) (citing *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir. 1988)); *see also* Fed. R. Bankr.P. 8013. For mixed questions of law and fact, the court "exercise[s] plenary review of the legal standard applied by the ... [B]ankruptcy [C]ourt[ ], but review[s] the [Bankruptcy] [C]ourt's findings of fact on a clearly erroneous standard." *In re Abbotts Dairies of Pennsylvania, Inc.* 788 F.2d 143, 147 (3d Cir.1986) (citing *Universal Minerals v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir.1981). "Legal questions are subject to plenary review." *Nelson,* 959 F.2d at 1263 (citing *Brown,* 851 F.2d at 84); *see also* Fed. R. Bankr.P. 8013).

In reviewing the applicability of section 363(m) to a sale of property of the debtor's estate, the question of whether Kroger was a good faith purchaser is a mixed question of law and fact. *See Abbotts,* 788 F.2d at 147 (stating standard of review regarding "the question of whether [purchaser] was a good faith purchaser ... is mixed"). The question of whether Wal–Mart's failure to obtain a stay before the closing of the Property rendered its appeals moot is a question of law. *See In re CGI Industries, Inc.,* 27 F.3d 296, 298 (7th Cir.1994) ("Whether the appellants' failure to obtain a more timely stay of the sale rendered their appeal moot is a question of law that we review *de novo*."). Similarly, the question of whether reversal of the Kroger Sale Order will affect the validity of the sale is a question of law. *See In re Oyster Bay Cove, Ltd.,* 196 B.R. 251, 254 (E.D.N.Y.1996) (question of whether lien-holders interest in property affects validity of a sale is a question of law).

## II. BACKGROUND

The debtor Bedford Square owns a shopping center, the Property, located in Bedford, Indiana. Both Kroger and Wal–Mart have stores at the Property and are tenants of Bedford Square. On June 28, 1999, prior to the bankruptcy filing by Bedford Square, Wal–Mart and Bedford Square executed the Wal–Mart Agreement, the terms of which provided that Wal–Mart would purchase a portion of the Property and Bedford Square would assign to Wal–Mart a ground lease for that portion of the Property. Under the Wal–Mart Agreement, Bedford Square would still own part of the Property, including Kroger's leased premises. Wal–Mart hoped to build a "super store" on the portion of the Property purchased from Bedford Square. Wal–Mart's plans included altering and redesigning the parking areas of the Property. In a later amendment to the Wal–Mart Agreement, the closing date for the purchase of a portion of the Property was set for July 14, 2000.

On December 10, 1999, Bedford Square filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. A month later, on January 28, 2000, Bedford Square filed a motion requesting an order approving the sale of a portion of the Property to Wal–Mart, pursuant to the Wal–Mart Agreement entered into prepetition between Bedford Square and Wal–Mart. On February 28, 2000, Kroger objected to the proposed Wal–Mart sale, claiming it violated a restrictive covenant in Kroger's lease prohibiting improvements or alterations to the parking lot without Kroger's approval. On March 2, 2000, a hearing on the motion was held before the Bankruptcy Court. On April 5, 2000, the Bankruptcy Court overruled Kroger's objection and entered the Wal–Mart Sale Order approving the sale of a portion of the Property to Wal–Mart. Two weeks later, Kroger filed an appeal of the Wal–Mart Sale Order.

On April 19, 2000, Bedford Square filed a motion requesting that Kroger be required to move for a stay of the Wal–Mart Sale Order pending appeal or be forever barred from obtaining such a stay. A hearing on Bedford Square's motion was held on April 26, 2000. On the same day, the Bankruptcy Court entered an order providing that, unless Kroger filed a motion for a stay pending appeal and posted a supersedeas bond by May 10, 2000, Kroger would be forever barred from obtaining such a stay. As provided for in the Bankruptcy Court's April 26th order, on May 10, 2000, Kroger filed a motion for a stay. A week later, the Bankruptcy Court entered an order granting a stay of the Wal–Mart Sale Order but requiring Kroger to post a supersedeas bond of $2,822,500. Soon thereafter, Kroger posted the required bond.

On July 13, 2000, Bedford Square and Kroger entered into a sale agreement under which Kroger agreed to purchase the *entire* Property from Bedford Square. One week later, Bedford Square filed a motion seeking approval of the purchase agreement between Bedford Square and Kroger. Wal–Mart objected to the sale motion. On August 3, 2000, following a hearing, the Bankruptcy Court overruled Wal–Mart's objection. Faced with competing agreements of sale, the Bankruptcy Court then ordered that the Property be sold at auction. On August 16, 2000, the Bankruptcy Court entered the Procedures Order setting the ground rules for the auction.

Between August 28, 2000 and August 30, 2000, under the Procedures Order as well as amendments to that order approved by the Bankruptcy Court, both Kroger and Wal–Mart submitted bids and counter-bids regarding the Property. After hearing, the Bankruptcy Court found Kroger's $6.75 million bid to be the highest and best and approved the sale of the Property to Kroger. Although Wal–Mart's bid was technically for a larger dollar figure than Kroger's, the Bankruptcy Court found Kroger's bid was more valuable because, unlike Wal–Mart's offer, Kroger's offer had no contingencies and allowed the sale to close immediately. On August 30th, the Bankruptcy Court entered the Kroger Sale Order approving the sale of the Property to Kroger. The Bankruptcy Court denied Wal–Mart's motion for a stay of the sale pending appeal of the Procedures Order and the Kroger Sale Order. The sale of the Property closed on the morning of September 1, 2000.

On September 1, 2000, Wal–Mart filed a notice of appeal of the Procedures Order and the Kroger Sale Order. At the same time, Wal–Mart also filed with this court a motion to stay the sale of the Property to Kroger and a memorandum of law in support of its motion to stay. On September 12, 2000, the court denied as moot Wal–Mart's motion to stay in that the sale to Kroger had already closed. However, the court granted Wal–Mart leave to file an amended petition for writ of mandamus which Wal–Mart did on October 6, 2000. On October 26, 2000, at the request of Wal–Mart and after hearing, the court stayed the hearing on confirmation of Bed-

ford Square's proposed reorganization plan, pending full briefing by the parties of the three appeals and the amended petition for writ of mandamus.

## III. DISCUSSION

### A. Wal–Mart's Appeals of the Procedures Order and Kroger Sale Order

#### 1. Statutory Mootness Under Section 363(m)

■ The Bankruptcy Court determined that the sale of the Property to Kroger was in accordance with section 363(m) of the Bankruptcy Code. Section 363(m) reads in relevant part:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m) (emphasis added). Section 363(m) renders moot any appeal of an order approving sale of property to a good faith purchaser if "(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease." *Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.,* 141 F.3d 490, 499 (3d Cir.1998).

#### a. Kroger as Good Faith Purchaser

■ The court must first determine whether Kroger is a good faith purchaser as required by section 363(m). Under section 363(m), a sale of assets may not be reversed or modified if the property was sold to an "entity that purchased ... [the] property in good faith." 11 U.S.C. § 363(m). Even if a party fails to obtain a stay of a sale order, that party may still challenge the sale on the grounds that the

entity who purchased the property did not do so in good faith. *See, e.g., In re Filtercorp Partners, L.P.,* 163 F.3d 570, 576–77 (9th Cir.1998); *In re Colony Hill Assocs.,* 111 F.3d 269, 272 (2d Cir.1997). " 'The requirement that a purchaser act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings.' " *Id.* (quoting *In re Rock Industries Machinery Corporation,* 572 F.2d 1195, 1197 (7th Cir.1978)).

Because "neither the Bankruptcy Code nor the Bankruptcy Rules attempt[ ] to define 'good faith[,]' [c]ourts applying section 363(m) ... have ... turned to traditional equitable principles, holding that the phrase encompasses one who purchases in 'good faith' and for 'value.' " *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir.1986). The Third Circuit has determined that, in reviewing the "good faith" of a purchaser, the court must first "determine whether there was any impermissible collusion between the purchaser and the debtor." *Id.* at 151. If there was such collusion, the court "should then determine whether the purchaser paid "value" for the assets purchased." *Id.* Finally, "if the court determines that [the purchaser] did not pay 'value,' it [must] ... determine whether it has the power to undo the sale to [the purchaser]." *Id.*

In reviewing the Bankruptcy Court's finding that Kroger was a "good faith" purchaser, the court finds that the record below amply supports such a finding. During the hearing on Kroger's status as a good faith purchaser, Kroger proffered the testimony of Thomas P. O'Brien, Senior Counsel and Assistant Secretary of Kroger. O'Brien's proffered testimony, which Wal–Mart did not dispute at the hearing, established that (1) the sale agreement between Bedford Square and Kroger was the result of arm's length negotiations; (2) that there was no affiliation between Bedford Square and Kroger, nor any relationship between the major shareholders or directors; and (3) that there were no of-

fers of employment to any employee of Bedford Square.

Furthermore, the bidding process ultimately employed by the parties in auctioning the Property permitted Wal–Mart the opportunity to make competing bids. These procedures not only provided a fair opportunity for the interested parties to compete for the Property, it also ensured a greater return to the debtor for the sale of its principal asset, the Property. Given these facts, the court finds that there is no evidence of collusion between Kroger and Bedford Square, and, therefore, that Kroger is a good faith purchaser.[1]

### b. No Stay Obtained by Wal–Mart

Although Wal–Mart concedes that it never obtained a stay of the Kroger Sale Order either from the Bankruptcy Court or from this court, it argues that this failure is not dispositive because, at the time the Bankruptcy Court entered the Procedures Order and the Kroger Sale Order, it lacked jurisdiction. According to Wal–Mart, Kroger's appeal of the Wal–Mart Sale Order had divested the Bankruptcy Court of jurisdiction.

 Even assuming that Wal–Mart's jurisdictional contention is correct, Wal–Mart's argument still fails. As the Third Circuit has explained, section 363(m) "does not distinguish between a challenge to an order approving a sale predicated on jurisdictional grounds and a challenge based on other grounds." *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 650 (3d Cir.1997). Thus, regardless of the grounds of the appeal, " 'a stay is necessary to challenge a bankruptcy sale authorized under § 363(b).' " *Id.* (quoting *In re Sax*, 796 F.2d 994, 997 (7th Cir.1986)).

In *Sax*, quoted and relied upon by the Third Circuit in *Ranallo*, the Seventh Circuit explained the basis for refusing to allow a jurisdictional argument to bypass the clear language of section 363(m):

> The appellants raise the jurisdictional argument as if it somehow negates or excuses their failure to obtain a stay. It does not. This appeal is moot ... so we cannot reach the question of whether the bankruptcy court had jurisdiction to order and approve the sale.

*Id.* at 998. The *Sax* court opined that section 363 sets down the "proper procedural rules" for appealing an order approving a sale of property, regardless of whether the basis of the appeal rests in an argument concerning jurisdiction or on the merits. *See id.* ("Despite the maxim that 'subject matter jurisdiction can be raised at any time,' valid procedural rules cannot be ignored just because the jurisdictional decision is being challenged rather than the decision on the merits.").

 Although the *Ranallo* court, on the facts before it, found that an appeal of a sale order based on jurisdictional grounds still requires the appellant to obtain a stay, the Third Circuit indicated that the result may be different "if the bankruptcy court approved the sale of assets not even colorably within its jurisdiction." *Ranallo*, 112 F.3d at 650. This language suggests that Wal–Mart's appeals may not be moot under Section 363(m), despite its failure to obtain a stay, if Wal–Mart can demonstrate that the Bankruptcy Court did not have colorable jurisdiction at the time it entered the Kroger Sale Order.

Unlike the Kroger Agreement, the Wal–Mart Agreement was conditioned upon a number of contingencies being satisfied by July 14, 2000, the date proposed for closing in the Wal–Mart Agreement. Although Wal–Mart argued at the August 3rd hearing before the Bankruptcy Court and in its papers filed with this court, that it was blameless in the failure to meet those contingencies, it remains undisputed that Wal–Mart and Bedford Square did not

---

1. Because the court finds no collusion, it is not required to establish if Kroger purchased for value. *See Abbotts*, 788 F.2d at 151.

close the Wal–Mart Agreement by July 14, 2000. Nor did Wal–Mart seek an extension of the Wal–Mart Agreement closing date, as it had done previously in February, 2000, when it requested and obtained an extension of the closing date to July 14, 2000.

Kroger argues that the failure of Wal–Mart and Bedford Square to close the Wal–Mart Agreement by July 14, 2000 rendered moot Kroger's appeal of the Bankruptcy Court's decision to approve the sale to Wal–Mart. Kroger argues that because the agreement of sale between Bedford Square and Wal–Mart failed to close by July 14, 2000, the Wal–Mart Agreement expired, and after that date, there was no longer a "live" controversy between Bedford Square and Kroger. According to Kroger, the absence of a "live" issue rendered the issue on appeal at least arguably moot.

The Supreme Court has recognized that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Under Article III of the United States Constitution, the federal courts "lack . . . jurisdiction to review moot cases." *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). Notwithstanding Kroger's inexplicable failure to withdraw the appeal and advise the court that the issues in the appeal of the Wal–Mart Sale Order were moot, the issues in the appeal did not remain live after the Wal–Mart Agreement expired. In other words, the appeal is moot when the issues become moot, not when the court is notified. *See IAL Aircraft Holding, Inc. v. Federal Aviation Administration,* 216 F.3d 1304, 1305 (11th Cir.2000) (noting court's jurisdiction

is evaluated at the moment the mooting event occurs); *see also Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895) (noting mootness occurs upon the happening of an event which eliminates the case or controversy on appeal).[2] Given that at the time the Bankruptcy Court issued the Procedures Order and the Kroger Sale Order, the issues in Kroger's appeal of the Wal–Mart Sale Order were moot, the Bankruptcy Court had at a minimum colorable jurisdiction to enter the Procedures Order and the Kroger Sale Order.

c. Affect of Wal–Mart's Requested Relief on Validity of Kroger Sale

In its appeals of the Procedures Order and the Kroger Sale Order, Wal–Mart specifically requests that "this Court reverse, vacate and annul any sale of the assets of debtor/appellant Bedford Square . . . which has been effected or consummated pursuant to the purported 'Procedures Order' and 'Sale Order.'" Similarly, in its amended petition for writ of mandamus, Wal–Mart asks that the court "vacate the purported 'Procedures Order' entered August 16, 2000 and the purported Kroger Sale Order entered August 30, 2000." In addition, Wal–Mart in its amended petition asks that the court enter an order "commanding the sale and conveyance to Walmart Real Estate of the property and assets identified in the Bankruptcy Court Order entered April 5, 2000, in exchange for the consideration identified in that Order. . . ."

Kroger purchased the Property in its entirety on September 1, 2000. The majority of the proceeds of the purchase price have already been paid to Bedford Square's sole secured creditor, New York Life Insurance and Annuity Corporation.

**2.** It is not applicable in this case to argue that the case was not moot because the appeal presented an issue "capable of repetition yet evading review," *United States v. Antar,* 38 F.3d 1348, 1356 (3d Cir.1994), because the Wal–Mart agreement had expired and Bedford Square and Kroger had executed the

Kroger agreement, under which Bedford Square agreed to sell the entire Property to Kroger. Therefore, given the sale of the entire property to Kroger, the Wal–Mart appeal concerning one part of the Property was not capable of repetition.

Clearly, vacating the Procedures Order and the Kroger Sale Order and/or ordering the conveyance of a portion of the shopping center to Wal–Mart, as per the Wal–Mart Sale Order, would affect the validity of the sale of the Property to Kroger. Therefore, it is clear that the relief requested by Kroger, if implemented, could invalidate the sale of the Property to Kroger.

### 2. Summary Regarding Section 363(m)

The court determines that the three prerequisites for statutory mootness have been met in this case. One, the Property was sold to a good faith purchaser. Two, Wal–Mart failed to obtain a stay of the sale of the Property to Kroger. Three, the requested relief Wal–Mart seeks will upset the validity of the sale of the Property to Kroger. Moreover, Wal–Mart is not entitled to *Ranallo*'s exception to the section 363(m) stay requirement because the Bankruptcy Court had at least colorable jurisdiction when it entered both the Procedures Order and the Kroger Sale Order. For these reasons, the court finds no grounds for reversing or modifying either the Bankruptcy Court's Procedures Order or the Kroger Sale Order.

### B. Kroger's Appeal of the Wal–Mart Sale Order Approving Sale of the Property to Wal–Mart

The Bankruptcy Court's approval of the sale of the Property to Kroger indisputably ended any "live controversy" between Bedford and Kroger. Naturally, once Kroger became the sole owner of the Property, Kroger's claims against Bedford Square and Wal–Mart regarding the enforceability of the restrictive covenant became moot. Thus, even assuming that the entry of the Kroger Sale Order did not moot the Kroger appeal of the Wal–Mart Order, the ultimate sale of the Property to Kroger on September 1, 2000 accomplished the same goal. For these reasons, the court dismisses as moot the Kroger appeal.

### C. Wal–Mart's Amended Petition for Writ of Mandamus

In its amended petition for writ of mandamus, Wal–Mart asserts the same arguments it has advanced in its appeals of the Procedures Order and the Kroger Sale Order. Therefore, the court finds that, for the same reasons supporting the court's denial of Wal–Mart's appeals of the Bankruptcy Court's Procedures Order and Kroger Sale Order, Wal–Mart's amended petition for writ of mandamus should be denied. A "writ [of mandamus] will be granted only where the petitioner has shown that the [lower] court has committed a 'clear error of law,'" *Westinghouse Electric Corp. v. The Republic of Philippines*, 951 F.2d 1414, 1422–23 (3d Cir.1991), and where the party requesting the writ has met his burden of showing his entitlement to mandamus relief by "clear and indisputable" proof. *Id.* In light of the court's reasoning denying as moot Wal–Mart's appeals to the Bankruptcy Court's Procedures Order and the Kroger Sale Order, it is clear that Wal–Mart can neither show that the Bankruptcy Court committed a "clear error of law" or that its right to relief is "clear and indisputable." Consequently, this court will dismiss Wal–Mart's amended petition for writ of mandamus.

## III. CONCLUSION

For the reasons stated above in this memorandum, the Wal–Mart appeal of the Procedures Order and the Kroger Sale Order are dismissed as moot. For the same reasons, Wal–Mart's amended petition for writ of mandamus is dismissed as moot. Consequently, the Bankruptcy Court's confirmation of the sale of the Property to Kroger will not be vacated. Furthermore, Kroger's appeal of the Wal–Mart Sale Order is dismissed as moot.