735 F.2d 1456
 116 L.R.R.M. (BNA) 2587, 237 U.S.App.D.C. 20,
101 Lab.Cas. P 11,066
 Gerard MONZILLO, et al., members of American Postal Workers
Union, AFL-CIO, Appellees,
v.
Morris BILLER, et al., members of National Executive Board
of the American Postal Workers Union, AFL-CIO, Appellants.
TRINE COUNCIL, et al., members of American Postal Workers
Union, Cross-Appellants,
v.
Morris BILLER, et al., members of National Executive Board
of the American Postal Workers Union, AFL-CIO,
Cross-Appellees.
 Nos. 82-1937, 82-2035.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 28, 1983.
Decided June 1, 1984.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 82-01232).
 Darryl J. Anderson, Washington, D.C., with whom Anton G. Hajjar, Washington, D.C., was on the brief for Biller, et al., appellants in No. 82-1937 and cross-appellees in No. 82-2035.
 Thomas C. Greble, New York City, for Monzillo, et al., appellees in No. 82-1937 and cross-appellants in No. 82-2035. Allen B. Roberts, New York City, also entered an appearance for Monzillo, et al.
 Before TAMM and MIKVA, Circuit Judges, and McGOWAN, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 In March, 1982, members of the American Postal Workers Union (APWU or the Union) were informed that the Union's National Executive Board (the Board) had decided to purchase a new national headquarters. Appellees, individual members of the Union, and an association of Union affiliates brought this action under section 501 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 501 (1982), to prevent the Board from proceeding with the headquarters project until the Union membership had an opportunity to consider the transactions. Appellees claimed that the Board lacked authority under the Union's constitution to commit the Union to the announced transactions without bringing the matters before the membership at the National Convention. The district court entered judgment for appellees and enjoined the Board members from committing the Union to the sale or purchase of a headquarters "until the August 1982 Convention convenes, has the opportunity to consider [these issues], and adjourns." 96 Lab.Cas. (CCH) p 14,177 (D.D.C.1982). Because the court's order has expired on its own terms, we dismiss these appeals as moot.
 
 BACKGROUND
 
 2
 On February 11, 1982, the Union's National Executive Board voted unanimously to finalize the acquisition of a new national headquarters. The Board had been considering various relocation options for several months. Contrary to the Board's usual practice, however, this February meeting was not publicized and was held in closed executive session. The president and general secretary-treasurer of the Union intended to commit the Union to the new building by July, 1982, one month before the Union's National Convention. The decision was announced to the membership in an article that appeared in the March 1982 edition of the Union's magazine, the American Postal Worker. Following publication of the article, appellees, individual officers of state and local Union affiliates, and the Trine Council, an informal association of Union affiliates, filed this lawsuit in district court to prevent the Board from proceeding with the headquarters project.
 
 
 3
 Appellees brought the lawsuit pursuant to the Labor Management Reporting and Disclosure Act (LMRDA or the Act), 29 U.S.C. Sec. 501 (1982), claiming that the Board members had breached their fiduciary duties to the Union. Among the responsibilities of labor organization officials, which are set forth in section 501(a) of the Act, is "the duty ... to manage, invest, and expend [the money and property of the labor organization] in accordance with [the labor organization's] constitution and by-laws and any resolutions of the governing bodies adopted thereunder...." 29 U.S.C. Sec. 501(a).
 
 
 4
 Appellees brought this suit under section 501(b) of the Act, which authorizes members of a labor organization to sue on behalf of the organization when an officer is alleged to have violated any of the duties set forth in section 501(a). 29 U.S.C. Sec. 501(b). Before a member can file such a suit, however, a demand must have been placed on the labor organization to do so, and the organization must have failed to bring the suit within a reasonable period of time after that request had been made. Id. In their complaint, appellees alleged, inter alia, that the Board was without authority under the Union's constitution to commit the Union to the headquarters project. They sought "declaratory and injunctive relief" to prevent the Board members from selling the Union's current headquarters or committing the Union to acquire a new headquarters "until these issues can be considered and decided by the members of the APWU at the August 1982 National Convention of the APWU." Complaint p 1.
 
 
 5
 The district court consolidated the hearing on appellees' application for a preliminary injunction with the trial on the merits. Testimony at the one-day hearing focused on the section of the constitution which provides that the Board "shall be the highest ranking governing body of the [Union] in between conventions." APWU Constitution, art. X, Sec. 18. One of appellees' witnesses testified that section 18 was added to the constitution in 1980 to force the Board to follow membership resolutions between conventions and that it was designed to limit, not enlarge, the Board's powers. Appellants' witness, the general secretary-treasurer of the Union, testified that section 18 gave the Board the full authority, in between conventions, to engage in any business which it deems necessary or proper to protect the interests of the Union and its members.
 
 
 6
 An interpretation of a union constitution rendered by officials of a labor organization is entitled to considerable deference by a reviewing court and should not be overruled unless the court finds that the interpretation was unreasonable or made in bad faith. See Local 334, United Association of Journeymen and Apprentices v. United Association of Journeymen and Apprentices, 669 F.2d 129, 131 (3d Cir.1982); Busch v. Givens, 627 F.2d 978, 981 (9th Cir.1980); Stelling v. International Brotherhood of Electrical Workers, Local 1547, 587 F.2d 1379, 1388-89 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); English v. Cunningham, 282 F.2d 848, 850 (D.C.Cir.1960). Although appellants' construction of the disputed section seems reasonable on its face, the district court held for the appellees. The court appeared to be swayed by the specific circumstances surrounding the February vote. In a memorandum opinion and order issued two days after the trial, the court found that "[i]t [was] apparent from the secrecy and timing and from the testimony at trial that defendants intend[ed] to prevent the membership from considering the project." 96 Lab.Cas. (CCH) at 24,094. The court held that the Board members' interpretation of the Union's constitution was neither reasonable nor made in good faith, id. at 24,095, and concluded that appellants were "constitutionally unauthorized to commit the APWU to this project absent approval by the National Convention." Id. at 24,096 (emphasis added).
 
 
 7
 The court's two page order enjoined the appellants from committing the Union to the "sale or other disposition" of the current headquarters or to the "purchase or other acquisition" of a new headquarters "until the August 1982 APWU National Convention convenes, has the opportunity to consider the [transactions], and adjourns ......" (emphasis added). In addition, the court dismissed the Trine Council as a plaintiff, denied the Union's motion to intervene as a defendant, and set bond in the amount of $250.
 
 
 8
 One week after the district court issued its order, appellants filed a motion for a new trial. While that motion was pending, the Board adhered to the court's injunction by formally withdrawing from the proposed headquarters project. The district court denied the motion for a new trial on July 19, 1982 on the ground that the case had become moot. The court stated that, as a result of the withdrawal, "there is no longer a live controversy. Defendants seek an advisory opinion from the Court as to the [Board's] authority to conduct business." Appellees subsequently filed a request for attorneys' fees pursuant to section 501(b) of the LMRDA, but the district court stayed consideration of that request pending our disposition of this appeal.
 
 
 9
 The Union's National Convention convened on August 23, 1982 and adjourned on August 27, 1982. At that meeting, the Convention adopted an "interpretative resolution" which appeared to dispute the district court's interpretation of the Union's constitution. That resolution interpreted the constitution as giving the Board "full authority, except when a convention is in session, to make decisions and engage in transactions that the National Executive Board deems necessary in the best interests of the Union." See Appendix, post.
 
 
 10
 Appellants here claim that the appellees had not met the jurisdictional prerequisites for filing suit under section 501 of the LMRDA, that the Board's interpretation of its authority under the Union's constitution was proper, and that the district court had abused its discretion in denying their motion for a new trial. Monzillo v. Biller, No. 82-1937. The Trine Council cross-appealed from its dismissal as a party plaintiff. Trine Council v. Biller, No. 82-2035.
 
 
 11
 Appellees filed a motion to dismiss the appeal as moot. A motions panel of this court referred that motion to the merits panel and ordered the parties to brief two additional issues: whether either the injunction bond filed in district court or appellees' request for attorneys' fees bars a determination of mootness. We now hold that the underlying controversy is moot and that neither the $250 injunction bond nor the request for attorneys' fees preserves the merits of that controversy for our consideration.
 
 DISCUSSION
 I. The Underlying Controversy
 
 12
 Appellants contend that there is a continuing dispute between the parties concerning the Board's authority to acquire a new national headquarters on behalf of the Union. They claim that at least one appellee has threatened future litigation if the Board proceeds with any new transaction and argue that the district court's opinion has placed a cloud on the Board's authority to enter into agreements with outside parties. Specifically, appellants express concern that they will be subject to future liability if they proceed with the acquisition of a new headquarters.
 
 
 13
 It is well settled that "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Iron Arrow Honor Society v. Heckler, --- U.S. ----, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983). Article III prohibits federal courts from issuing advisory opinions. We are "not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before [us]." California v. San Pablo & Tulare Railroad, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893).
 
 
 14
 In general, a case becomes moot where the activities for which an injunction is sought have already occurred and cannot be undone. In this case, appellees obtained all the relief that they sought: the Board was enjoined from proceeding with the particular headquarters project under challenge until after the National Convention had met in August, 1982. Because that Convention has long since adjourned, there is no relief we can grant that could undo the effects of the district court's injunction.
 
 
 15
 Appellants contend, however, that the issue of declaratory relief is still "live" because the parties disagree over the Board's authority to commit the Union to the sale or acquisition of a national headquarters. While it is true that the complaint sought both injunctive and declaratory relief, it explicitly sought such relief only "until these issues can be considered and decided by the members of the APWU at the August 1982 National Convention...." The district court's order did not provide any declaratory relief and enjoined the Board from acting only until the Convention adjourned. The court's ruling on the motion for a new trial demonstrates that its initial order was limited to enjoining the Board from acting on that one particular project until the Convention adjourned. The relief sought and granted by the district court has expired on its own terms; there is nothing left for us to review. See Alton Southern Railway Co. v. International Association of Machinists, 463 F.2d 872, 882 (D.C.Cir.1972) ("The expiration of the decree appealed from means that the Union has no absolute right to maintenance of the appeal, and the court has no corresponding obligation to decide the appeal.").
 
 
 16
 We also reject appellants' argument that the underlying controversy is "capable of repetition, yet evading review," and, therefore, should not be dismissed as moot. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); see Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 179, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968). We recently outlined the two elements of the Southern Pacific doctrine: " '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same party would be subjected to the same action again.' " Environmental Defense Fund v. Gorsuch, 713 F.2d 802, 810 (D.C.Cir.1983) (quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975)). The first element is not met in this case. The entire procedure for the acquisition of a new headquarters is not "in its duration too short to be fully litigated prior to its cessation or expiration." Id. Moreover, the "interpretative resolution" adopted at the 1982 National Convention suggests that the second element also may be lacking, for that resolution may materially affect the Board's legal authority under the constitution. See 29 U.S.C. Sec. 501(a) (officers may expend union funds only "in accordance with [the union's] constitution and bylaws and any resolutions of the governing bodies adopted thereunder ...") (emphasis added). Thus, if a new lawsuit were to arise, the legal issues presented might be different.
 
 
 17
 We also find that appellants' reliance on cases where the defendants have voluntarily discontinued the behavior sought to be enjoined is misplaced. See County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); United States v. Concentrated Phosphate Export Association, Inc., 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968); United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). In such cases, courts have refused to apply the mootness doctrine if there is "some cognizable danger of recurrent violation...." W.T. Grant, 345 U.S. at 633, 73 S.Ct. at 897. Where the defendants' actions would appear to moot a controversy, "[d]efendants face a heavy burden to establish mootness ... because otherwise they would simply be free to 'return to [their] old ways' after the threat of a lawsuit had passed." Iron Arrow, 104 S.Ct. at 375 (quoting W.T. Grant, 345 U.S. at 632, 73 S.Ct. at 897). There is no danger of recurrent violation in this case because the district court was able to grant appellees full relief. Here, the defendants did not voluntarily refrain from going ahead with the headquarters project; they were under court order to do so until the National Convention had adjourned. Appellees have received the only relief they sought--an opportunity for the membership to consider the headquarters project at the National Convention in 1982. Unless some collateral issue keeps the case alive, the appeals must be dismissed as moot.
 
 II. The Injunction Bond
 
 18
 Appellants claim that the $250 injunction bond filed by appellees precludes us from dismissing this case as moot. Rule 65(c) of the Federal Rules of Civil Procedure requires the filing of a security bond by a party who benefits from a temporary restraining order or preliminary injunction:
 
 
 19
 No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.
 
 
 20
 FED.R.CIV.P. 65(c). The purpose of the security requirement is to protect a party from damages suffered if it is later determined that the preliminary relief was wrongfully granted. As Justice Stevens recently explained:
 
 
 21
 Since a preliminary injunction may be granted on a mere probability of success on the merits, generally the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully.
 
 
 22
 Edgar v. Mite Corp., 457 U.S. 624, 649, 102 S.Ct. 2629, 2644, 73 L.Ed.2d 269 (1982) (Stevens, J. concurring) (footnote omitted).
 
 
 23
 In this case, the district court "consolidated the hearing of the application for preliminary injunction with trial on the merits pursuant to Rule 65(a)(2)." 96 Lab.Cas. at 24,094. Because the district court granted appellees' request for a permanent injunction, it may have been unnecessary for the court to order appellees to post bond. The court's memorandum opinion makes no mention of the bond and the court's order simply states that "bond is set in the amount of $250."
 
 
 24
 Even assuming, however, that the district court properly ordered the posting of the bond, the bond does not preserve the underlying controversy. The mere fact of the bond is insufficient to keep the case alive; otherwise no appeal from a preliminary injunction could ever be dismissed as moot. In Japan Air Lines Co. v. International Association of Machinists, 538 F.2d 46 (2d Cir.1976), the court held that an appeal from a temporary restraining order that had prevented a union strike was moot, despite the existence of a $50,000 security bond. On appeal, the Union's counsel was "unable to articulate any compensable harm which his client ha[d] suffered as a result of the TRO.... The mere possibility that the Union may later claim damages which it cannot now identify is too slender a thread upon which to justify departure from the well-founded rule that an appeal from a TRO is rendered moot by the dissolution of the underlying order." Id. at 50-51. Similarly, appellants in this case have failed to identify any compensable harm arising from the issuance of the injunction, except for the costs of the litigation. The existence of the $250 bond, therefore, does not save this controversy from being dismissed as moot. See Doe v. Marshall, 622 F.2d 118, 119 (5th Cir.1980), cert. denied, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981) ($15 bond considered de minimus for purposes of determining mootness where defendants suffered no financial harm as a result of the preliminary injunction).
 
 
 25
 University of Texas v. Camenisch, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), does not dictate a contrary result. Unlike Camenisch, this is not a case where an injunction bond keeps an issue of damages alive even though the issue of injunctive relief is moot. In Camenisch, the district court granted a preliminary injunction to a deaf graduate student and ordered his school to provide an interpreter for him under the Rehabilitation Act. By the time the case reached the Supreme Court, the student had graduated. Although the student's underlying claim was moot, the question of whether the university was required to pay for the interpreter remained unresolved and had to be determined on the merits. The $3,000 injunction bond filed by the student had preserved that issue despite the expiration of the preliminary injunction. The bond could not be dissolved without reaching the merits of the controversy. Similar claims for damages arising from the granting of preliminary relief have been present when courts have declined to dismiss otherwise moot cases. See, e.g., Washington Steel Corp. v. TW Corp., 602 F.2d 594, 598-99 (3d Cir.1979) ($2 million bond preserved the question of whether a preliminary injunction, which had the effect of blocking a takeover effort, had been wrongfully issued); Klein v. Califano, 586 F.2d 250 (3d Cir.1978) (en banc) (government's right to seek recoupment of past Medicaid payments made to a hospital required a determination of the correctness of the injunction that had ordered those payments); but see UAW v. LaSalle Machine Tool, Inc., 696 F.2d 452, 458-59 (6th Cir.1982); Associated General Contractors of Minnesota v. International Union of Operating Engineers Twin City Local No. 49, 519 F.2d 269, 271-72 (8th Cir.1975).
 
 
 26
 No such claim for damages arising from the injunction has been asserted in this case. If we were to extend Camenisch to these facts, no preliminary injunction or temporary restraining order could ever be dismissed as moot. In every case where a bond must be filed under Rule 65(c), the losing party could argue that determining who should bear the costs of the litigation precludes a finding of mootness. Standing alone, a bond that only covers the costs of litigating a preliminary injunction does not preserve an otherwise moot controversy for final adjudication on the merits.
 
 
 27
 The Supreme Court's opinion in Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964), does not compel a contrary result. In Liner, an employer sued in state court to enjoin a union from picketing. The court granted a permanent injunction upon execution of a bond which provided that, if the action failed, the company would pay all costs, damages, and related expenses arising from any suits brought to challenge the injunction. The union claimed that the state court had no jurisdiction to grant the injunction because Congress had invested the National Labor Relations Board with exclusive jurisdiction to determine the legality of union picketing. The state courts rejected that argument. Although the construction project at issue had been completed by the time the case reached the Supreme Court, the Court refused to dismiss the case as moot. The Court explained that the injunction bond gave the union a "substantial stake" in the judgment because the employer could "indemnify [the union] in damages if the injunction was 'wrongfully' sued out." Id. at 305, 84 S.Ct. at 394. But, in deciding to reach the merits of the case, the Court emphasized the importance of having a federal court decide the federal question posed by the employer's conduct:
 
 
 28
 [A]n employer armed with a state injunction would have no incentive to initiate Board proceedings. It would encourage such interference with the federal agency's exclusive jurisdiction if a state court's holding of mootness based on the chance event of completion of construction barred this Court's review of the state court's adverse decision on the claim of federal preemption. We have given significant weight to the vital importance of preventing state injunctions from frustrating federal labor policy in situations which the Congress has ordained shall be dealt with exclusively by the Board.
 
 
 29
 Id. at 307-08, 84 S.Ct. at 395 (footnote omitted) (emphasis added). Liner is therefore inapposite. The Court there was concerned primarily with reaching an important federal question that might otherwise escape review. No such issue is presented in this appeal. The $250 injunction bond here does not justify our reaching the merits of this otherwise moot controversy.
 
 III. Application for Attorneys' Fees
 
 30
 The LMRDA permits a trial judge to award attorneys' fees to the party bringing suit under section 501(b) of the Act. The statute provides: "The trial judge may allot a reasonable part of the recovery in any action under [subsection 501(b) ] to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation." 29 U.S.C. Sec. 501(b). It is true that attorneys' fees can be awarded under this provision even where there has been no monetary recovery. See Usery v. Local Union No. 639 International Brotherhood of Teamsters, 543 F.2d 369, 382 n. 34 (D.C.Cir.1976), cert. denied, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977); Ratner v. Bakery and Confectionary Workers International Union, 354 F.2d 504 (D.C.Cir.1965). But the courts have always insisted that, to justify such an award, the plaintiff must have "rendered a substantial service to his union as an institution and to all of its members." Hall v. Cole, 412 U.S. 1, 8, 93 S.Ct. 1943, 1948, 36 L.Ed.2d 702 (1973). See Local 639, 543 F.2d at 382 n. 34. Appellees have filed an application for nearly $50,000 in attorneys' fees with the district court. Appellants claim that consideration of the fee request requires a final determination on the merits of appellees' underlying claim and that, therefore, we should reach the merits and refuse to dismiss the appeal as moot.
 
 
 31
 A request for attorneys' fees "does not preserve a case which otherwise has become moot on appeal...." U.S. v. Ford, 650 F.2d 1141, 1143 (9th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982). In Crowell v. Mader, 444 U.S. 505, 100 S.Ct. 992, 62 L.Ed.2d 701 (1980), for example, the Supreme Court held that a state legislature's enactment of a new reapportionment plan mooted plaintiffs' attack on a previous plan. The Court stated, however, that the plaintiffs could still apply for attorneys' fees in the district court. Id. at 506, 100 S.Ct. at 992. We have held that a court can decide whether attorneys' fees should be awarded "in cases which have never reached final adjudication on the merits." Yablonski v. United Mine Workers of America, 466 F.2d 424, 431 (D.C.Cir.1972), cert. denied, 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973). See Grano v. Barry, 733 F.2d 164, at 168 n. 2 (D.C.Cir.1984) (dismissal of appeal as moot does not dispose of a claim for attorneys' fees); Doe v. Marshall, 622 F.2d at 119 ("This court has frequently refused to consider the merits of an otherwise moot case and has left the question of attorneys' fees for the district court on remand."); Bagby v. Beal, 606 F.2d 411, 414 (3d Cir.1979) (the court need not review the merits of a case to determine whether plaintiff is entitled to attorneys' fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. Sec. 1988). See also Comment, Civil Rights Attorney's Fees Award in Moot Cases, 49 U.CHI.L.REV. 819 (1982).
 
 
 32
 Nor is it necessary to have a final determination on the merits of appellees' claim to decide whether they are entitled to attorneys' fees under the LMRDA. The question is whether appellees' efforts to bring about the district court's injunction--properly granted or not--conferred a substantial benefit on the Union. The application for attorneys' fees does not preserve the entire controversy for a final determination on the merits.
 
 
 33
 Although appellees' application for fees must be considered by the district court in the first instance, that court's discretion to award fees will be limited in this case. The LMRDA "does not give courts a license to interfere broadly in internal union affairs." Morrissey v. Curran, 650 F.2d 1267, 1273 (2d Cir.1981). The question of whether the Board's interpretation of the constitution was unreasonable and made in bad faith was, at best, a close one. In this regard, the district court should consider the import of the interpretative resolution which was adopted by a majority of voting members at the National Convention. That resolution appears to be consistent with the Board's interpretation of the Union's constitution. The resolution, therefore, undermines a finding that the Board's interpretation was unreasonable and made in bad faith. A majority of the delegates at the National Convention appear to have supported the Board, suggesting that the two year delay in acquiring a new headquarters, which has resulted from this litigation, did not confer a substantial benefit on the Union.
 
 CONCLUSION
 
 34
 We hold that these appeals must be dismissed as moot. The relief sought and granted by the district court has expired on its own terms, and neither the $250 injunction bond nor the application for attorneys' fees preserves the underlying controversy for final adjudication on the merits.
 
 
 35
 Appellants have expressed concern that the district court's judgment has placed a cloud on their authority to commit the Union to any major real estate agreement. Any such cloud will be removed with the issuance of our decision today directing the district court to vacate its judgment and order. See United States v. Munsingwear, 340 U.S. 36, 40-41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950). Each side should bear its own fees and costs on appeal.
 
 
 36
 It is so ordered.
 
 APPENDIX
 
 37
 The full text of the interpretative resolution, which was adopted by a vote of 1,087 to 843, is as follows:
 
 ARTICLE 10--INTERPRETATIVE RESOLUTION
 
 38
 WHEREAS, Under Article 10, Section 13 (presently, Section 18) it notes that the National Executive Board is the ranking governing body of the APWU between conventions with all authority necessary to conduct the affairs of the Union between conventions; and
 
 
 39
 WHEREAS, A District Court Judge has recently seen fit to interpret the Constitution for the Union and to tell the Union that the National Executive Board does not have the necessary authority to run the affairs of the Union between conventions; and
 
 
 40
 WHEREAS, The power to interpret its own constitution properly lies with the Union itself;
 
 
 41
 THEREFORE, Be It Resolved, That Article 10, Section 13 (presently Section 18) of the Constitution be, and it hereby is, interpreted by this APWU Sixth Biennial National Convention, convened in Miami, Florida, to give the National Executive Board the full authority, except when a convention is in session, to make decisions and engage in transactions that the National Executive Board deems necessary in the best interests of the Union.