Lynn MARTIN, Sec'y of Labor, Plaintiff,

and

Grafton Lee Brown, III,
Plaintiff–Intervenor,

v.

RADIO–ELECTRONICS OFFICERS'
UNION, DISTRICT 3,
Defendant,

and

John S. Cooper, Defendant–Intervenor.

Civ. A. No. 91–2599.

United States District Court,
District of Columbia.

Feb. 23, 1993.

John R. Munich, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. for the District of Columbia and John D. Bates, Asst. U.S. Atty., for plaintiff.

David J. Bartone, Washington, DC, and Ernest Allen Cohen, Tucson, AZ, for the plaintiff-intervenor.

Ira R. Mitzner and Catherine L. Kello, of Dickstein, Shapiro & Morin, Washington, DC, for defendant.

Charles R. Both, of Yablonski, Both & Edelman, Washington, DC, for defendant-intervenor.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

I.  INTRODUCTION

The above-captioned case comes before the Court pursuant to Title IV of the Labor–Management Reporting and Disclosure Act of 1959 ("the LMRDA"), 29 U.S.C.

§§ 481–483. Mr. Eric Weber was elected to the position of Gulf Coast representative on the District Executive Council ("DEC") of the Radio–Electronics Officers Union ("ROU" or "the Union") in a regular election held in 1990. Mr. John S. Cooper was elected to that same position in a special election held in 1991. The Secretary of Labor ("the Secretary") seeks to invalidate the results of the special election and reinstate Mr. Weber into office. The Plaintiff–Intervenor, Mr. Grafton Lee Brown, III, a union member, joins in the Secretary's challenge of the special election, and the Defendant–Intervenor, Mr. Cooper, defends his victory in the special election.

Based upon the evidence presented at the hearing on the merits held on October 26, 1992, before the Court, the submissions of the parties, and the applicable law, the Court must conclude that Mr. Weber's election was invalid under both federal statute and regulations, as hereinafter explained. Mr. Cooper must be considered the legitimate holder of the position, and not Mr. Weber, because his election complied with the Union's Constitution and bylaws as well as the LMRDA, 29 U.S.C. § 481(e), and the Department of Labor ("DOL") regulations, 29 C.F.R. 452.86 (1992).

ROU acted reasonably in scheduling the 1991 special election after discovering that errors in the distribution of ballots for the regular election caused at least twelve Union members not to have the opportunity to vote. Because the Gulf Coast election was decided by only eleven votes, the twelve members not given the chance to vote could have made a difference in the regular election's outcome. Consequently, and in perfect compliance with the democratic ideals of the LMRDA, the Union acted properly in holding the special election and giving every Union member adequate notice and opportunity to participate in that election. Judgment must be entered for the Union and Mr. Cooper, the Defendant and the Defendant–Intervenor in this case.

## II. BACKGROUND

Most of the facts surrounding the election are undisputed by the parties. The ROU bylaws require elections to be held every three years, and one such election was held in 1990. *See* Def.'s Ex. 19, Article 9, Section 3. In May of 1990, in compliance with the bylaws, the Secretary–Treasurer of ROU began preparing for the upcoming December election by notifying radio officers located throughout the world that nominations were being opened for various officer positions of the ROU, including the position of DEC Gulf Coast representative. *See id.*, Article 9, Section 1. Thereafter, from June 26, 1990, to November 5, 1990, notices were sent by the ROU to members reminding them that their quarterly dues must be paid by November 18, 1990, if their ballots were to be counted on December 3, 1990.

These notices, reminders, and communications were sent only to those members whose names appeared in ROU's computer records. Certain new members, who were serving as apprentices pursuant to a special training program, erroneously had not been entered in the computer records and consequently did not receive any notice of the election or that their quarterly dues must be paid before they could cast ballots in the election. The Secretary does not dispute that these apprentices were "members" of ROU and would have been able to vote in the 1990 election had they paid their quarterly dues by November 18, 1990.[1]

---

1. The Plaintiff–Intervenor, Grafton Lee Brown, III, argues that the apprentices are not "members" under the terms of the bylaws and are not entitled to vote. However, Mr. Brown made this same claim in an administrative complaint filed with the Secretary prior to the filing of the instant suit. The Secretary explicitly considered and rejected Mr. Brown's claim, concluding that the apprentices were "members" and would have been entitled to vote had they paid their dues. *See Monzillo v. Biller,* 735 F.2d 1456 (D.C.Cir.1984); *English v. Cunningham,* 282

F.2d 848 (D.C.Cir.1960) (requiring a Union's reasonable and good faith interpretation of its bylaws to be given deference).

The LMRDA, the statute which allegedly provides a cause of action in this case, was intended by Congress "to prevent [union] members from pressing claims not thought meritorious by the Secretary...." *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 536, 92 S.Ct. 630, 635, 30 L.Ed.2d 686 (1972). A union member may intervene in a post-election LMRDA

On or about September 1, 1990, ROU's Secretary–Treasurer and his staff prepared a list of potential eligible voters and forwarded the list to the American Arbitration Association ("the AAA"), which mailed out the ballots and counted the completed, returned ballots on December 3, 1990. As was the Union's standard practice, the Secretary–Treasurer included in the voter list a number of members who were not then current in their dues payments, but who were expected to pay their dues by the November 18, 1990, deadline. The list did *not* contain the names of eleven apprentices who were members of ROU, but whose names had not yet been entered into the computer records of the Union. The eligibility list was updated by the Secretary–Treasurer on or about November 18, 1990, but the final list used by the AAA still did not contain the names of the eleven apprentices.

The AAA conducted the ballot count on December 3, 1990. The winner in the DEC Gulf Coast race was Mr. Eric Weber, who won by a margin of eleven votes over Mr. John Cooper. The ballot of one apprentice, Mr. John Overstreet, was challenged and not counted. Upon investigation, the Union subsequently discovered that a number of apprentices had not been entered on the membership lists and had been denied a fair opportunity to pay their dues and vote in the election. The Union decided that a special election would have to be held for the DEC Gulf Coast position because at least twelve members were not given the opportunity to vote in the regular election, and the wrongful denial of their voting rights might have changed the result of the election. Consequently, a special election for the Gulf Coast position was held on March 25, 1991, in which Mr. Cooper was the victor.

In response to a complaint filed by Mr. Weber, the Department of Labor investigated both the regular and the special election. The Secretary disagreed with the

Union's conclusion that the errors made in the regular election affected twelve votes, and concluded that the special election was not necessary. The Secretary filed the above-captioned case in this Court, seeking to have the results of the special election voided and Mr. Weber reinstated to the position of Gulf Coast representative. On November 15, 1991, this Court permitted Mr. Grafton Lee Brown, III, one of the union members, to intervene as a Plaintiff; on February 31, 1992, this Court permitted Mr. Cooper, the victor in the special election, to intervene as a Defendant in this case.

On August 10, 1992, this Court denied the parties' cross-motions for Summary Judgment because the parties disagreed as to the actual number of votes affected by the irregularities in the balloting of the regular election. The Court held an evidentiary hearing on October 26, 1992, to determine the impact of the irregularities of the 1990 regular election. The Court concludes that, because at least twelve votes were affected by the errors, Mr. Weber's victory in the general election was invalid, and ROU's decision to hold a special election was proper and reasonable.

III. BECAUSE AT LEAST TWELVE UNION MEMBERS WERE ERRONEOUSLY DENIED THE OPPORTUNITY TO VOTE IN THE REGULAR ELECTION, POSSIBLY CHANGING THE REGULAR ELECTION'S OUTCOME, THE UNION'S DECISION TO HOLD A SPECIAL ELECTION WAS REASONABLE AND PROPER AND DID NOT VIOLATE ANY PROVISION OF THE LMRDA.

▮ The parties do not dispute the law applicable to this case. 29 U.S.C. § 481(e) provides that:

In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for

---

enforcement suit, but "that intervention is limited to the claims of illegality presented by the Secretary's complaint." *Id.* at 537, 92 S.Ct. at 636. Consequently, the statute prevents Mr. Brown from raising an issue already rejected by

the Secretary. The Court must accept as conceded that the apprentices were "members" of ROU when determining whether the apprentices' exclusion from the regular election warranted holding a special election.

the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office....

This provision guarantees the right of a union members to hold office when selected through a fair and proper election. *Wirtz v. Hotel, Motel and Club Employees Union*, 391 U.S. 492, 498, 88 S.Ct. 1743, 1747, 20 L.Ed.2d 763 (1968). As this Court has previously explained in its Memorandum Opinion of August 10, 1992, once the Secretary presents a prima facie case of a violation of § 481(e), ROU may offer evidence to show that there was no violation of § 481(e) or that the alleged violation did not have an anti-democratic effect. *See Brennan v. Local No. 639, Int'l Bro. of Teamsters, et al.*, 494 F.2d 1092 (D.C.Cir. 1974).

■ In determining whether a violation of § 481(e) occurred, the Court must defer to ROU's interpretation of its Constitution and bylaws so long as that interpretation is reasonable and made in good faith. *See, e.g., Monzillo v. Biller*, 735 F.2d 1456 (D.C.Cir.1984); *English v. Cunningham*, 282 F.2d 848 (D.C.Cir.1960). *See also* 29 C.F.R. § 452.2. In this case, the ROU's decision to hold a special election was a reasonable one because twelve of the Union members had been improperly denied the opportunity to vote in the regular election, and the decision did not have any "anti-democratic" effect as forbidden by the LMRDA.

■ Title IV of the LMRDA was designed, first and foremost, "to insure 'free and democratic' elections." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470, 88 S.Ct. 643, 648, 19 L.Ed.2d 705 (1968). ROU's decision to hold a special election because some members failed to receive notice of the general election cannot be construed as "anti-democratic." In-

deed, the decision to hold another election, of which *all* members would have equal notice of the candidates and voting requirements, maximized the opportunity of all the Union members to take part in the election process. The special election was the Union's effort to avoid the inevitable controversy that would arise if the results of the general election were upheld, and this Court must give the Union "great latitude" and deference in evaluating that decision. *Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964).

The decision to hold a special election was a fair and reasonable one because the errors in the regular election put at least twelve votes at issue, and the margin of victory in the regular election was eleven votes. The Secretary concedes that at least four apprentices who should have been permitted to vote in the regular election were not sent ballots.[2] The Secretary also concedes that John Overstreet, the apprentice whose vote was challenged by a union member and not counted by the AAA, should have been permitted to vote. Another seven apprentices received no notice whatsoever of the election or their dues obligations. These seven were not current in their dues at the time of the regular election.[3] However, it would have been unfair to exclude new Union members from the voting process because they failed to comply with a requirement of which they had received no notice.

The decision to hold a special election is supported by the LMRDA and related Department of Labor ("DOL") regulations. The LMRDA requires that an election notice be sent to the home address of each member not less than fifteen days prior to the election. 29 U.S.C. § 481(e). The Union correctly argues that, had it upheld the results of the regular election, it may well have been in violation of this statutory

---

**2.** The names of the apprentices whom the Secretary concedes should have been sent ballots are Ralph Albers, Rajah Grady, Harvey Nation, and John Tibbs.

**3.** The parties agree that Edward Epley, Kenneth Hunter, John Keegan, Robert Snead, William Turner, and Edward Ray Williams had not been sent any notice as to the election and were not

current in their dues. The parties also agree that the dues status of another apprentice, Edward Prozmo, cannot be determined, nor could it be determined at the time the decision was made to hold the special election. The Court assumes, without deciding, that Mr. Prozmo was not current in his dues at the time of the regular election.

provision. Furthermore, the DOL has issued regulations which require that every member "must be afforded a reasonable opportunity to pay dues, including a grace period during which dues may be paid without any loss of rights." 29 C.F.R. § 452.86 (1992). This DOL regulation was violated, in that the seven members who received no notice of the election or of their dues obligations received no such grace period.

Thus, when the seven new members who did not receive notice of the election or their dues obligations are combined with the five other new members whom the Secretary concedes should have been permitted to vote in the regular election, a total of twelve members—and twelve votes—were affected by the errors of the first election. Consequently, the Gulf Coast position, won by a margin of only eleven votes, might have come out differently had those twelve members voted. The Union's decision to hold another election, enabling *all* of the Union members the same opportunity to vote, was perfectly in keeping with the democratic ideals of the LMRDA.

Finally, the Court notes that the Secretary's investigation into the circumstances surrounding the elections took four months. It would have been unreasonable for the Union to spend that much time deciding whether to hold a special election. The Secretary–Treasurer of the ROU, who testified at the October 26, 1993, hearing, and who was very credible and convincing, explained that the Union did not have the time to track down and question each new member as to whether the member was aware of the dues obligations or if the member had heard of the upcoming election through other members. The Union had to make a swift decision based upon the information it had at the time, and without the benefit of hindsight which the Secretary now enjoys. The Union's choice to hold the special election was reasonable and proper both with respect to federal statutes and regulations, and to the Union's own practices, and this Court will not overturn the results of the special election, giving due deference to the decision of the Union and its efforts to give all of its members a fair opportunity to participate in the election process.

## IV. CONCLUSION

Based upon the evidence presented at the hearing held on October 26, 1992, the submissions of the parties, the applicable law, and the credibility of the witnesses who testified before the Court, the Court must conclude that ROU acted reasonably and correctly in scheduling the 1991 special election after discovering that errors in the distribution of ballots for the regular election made the results of that election suspect. Consequently, Judgment must be entered for the Defendant and the Defendant–Intervenor in this case. The special election was proper under the circumstances, and Mr. Cooper properly holds the position of Gulf Coast representative by virtue of his victory in the special election. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.