# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 22, 2018          Decided July 17, 2018

No. 17-7024

DAVID W. NOBLE, JR.,
APPELLANT

v.

WILLIAM M. DUNN, JR., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:94-cv-00302)

———

*Virginia W. Hoptman* argued the cause for appellant. With her on the briefs was *Jerome A. Madden*.

*Peter D. DeChiara* argued the cause for appellees. With him on the brief were *Nicholas R. Femia*, *Keith R. Bolek*, and *Victoria L. Bor*. *Brian Powers* and *Bruce H. Simon* entered appearances.

Before: HENDERSON and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

KAREN LECRAFT HENDERSON, *Circuit Judge:* For nearly twenty-five years David W. Noble, Jr. has pressed his claims against the now-former leadership of the National Association of Letter Carriers (NALC or Union). A decade ago one of our colleagues urged an end to "this 14-year litigation odyssey." *Noble v. Sombrotto* (*Sombrotto II*), 525 F.3d 1230, 1242 (D.C. Cir. 2008) (*per curiam*) (Kavanaugh, J., concurring in part and dissenting in part). But as in the original *Odyssey*, there was still a ten-year ordeal to endure—and Noble's arguments, like Penelope's tapestry, have tended to unravel.

Federal law requires labor unions to operate transparently and as fiduciaries of their members. This litigation is about Noble's claims that his Union has violated those requirements by failing to comply with document requests and by permitting its officers to enrich themselves beyond the salaries permitted by the Union constitution. Even after our 2008 remand, however, Noble failed to give the district court reason to rule for him; he meets with no greater success on appeal.

## I. Background

Noble was a letter carrier and NALC member for many years before he became an employee at the Union's Washington, D.C. headquarters. He became troubled by the senior leadership's use of Union resources: they collected per diem pay during the Union's annual D.C. convention even though they lived in the area year-round; they also collected monthly reimbursements for undocumented expenses; and the Union reimbursed them for Medicare and Social Security withholdings.

In February 1994, after unsuccessfully asserting his claims through the Union's internal procedures, Noble filed a complaint in district court against NALC's then-president and nine other officers under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.* Noble later added the Union itself as a defendant. Noble alleged that the officers had breached their fiduciary duties by granting themselves tax reimbursements, unjustified per diem payments and undocumented expense allowances, all in violation of section 501 of the LMRDA. Noble further alleged that the officers had wrongly refused his requests to inspect certain Union financial records, in violation of section 201 of the LMRDA. After more than a decade of litigation, the district court held a bench trial and entered judgment for the Union and its officers. *Noble v. Sombrotto* (*Sombrotto I*), No. 94-302, 2006 WL 2708796, at *1 (D.D.C. Sept. 20, 2006).

Noble appealed and, in May 2008, we affirmed in part and vacated in part. *See Sombrotto II*, 525 F.3d at 1242. We upheld the judgment for NALC on Noble's claims regarding the officers' per diem payments and tax-withholding reimbursements. At the same time, however, we held that the district court had erred in two ways.

First, we concluded that the district court erroneously dismissed Noble's section 501 fiduciary duty claim related to the officers' undocumented expense reimbursements. The district court's dismissal of that claim was based on the clearly erroneous finding that there was "no evidence" to support Noble's allegations of impropriety. But "Noble presented ample circumstantial evidence that officers were using the allowance for personal use," that is, the officers were foregoing significant tax savings by failing to document their claimed expenses. *Id.* at 1236. When officers

submitted receipts to document their spending, they were entitled to reimbursement; when they simply requested reimbursement without documentation, they were credited up to $500 a month in taxable income. *Id.* The record evidence showed that most of the officers did not substantiate their expenses, preferring, they claimed, to avoid the hassle of keeping track of receipts and itemizing their reimbursement requests. *Id.* We concluded that the district court had given short shrift to Noble's argument that the officers would have submitted receipts and received reimbursement—instead of taxable income—had their expenses been legitimate. *Id.* ("The officers had a direct financial incentive" to substantiate expenses because "each officer could easily have avoided a substantial additional tax liability by keeping and submitting receipts for legitimate union-related expenses he or she incurred each month.").

Second, we could not determine the factual basis for the district court's finding that Noble's section 201 claim was moot. According to the district court, Noble had already been given access to all Union documents he had requested, there were no outstanding section 201 issues to resolve and the claim was therefore moot. *Id.* at 1241. Noble argued that holding was clearly erroneous. *Id.* Because we concluded the district court had failed to explain how it had resolved Noble's document requests, we vacated the mootness dismissal and remanded for further proceedings. *Id.* at 1241–42.

On remand the district court issued two orders, one on Noble's remaining section 501 claim and the other on his section 201 claim. The district court carefully explained its factfinding and analysis, but, as before, Noble lost on both claims. On the section 501 claim, the district court evaluated Noble's circumstantial evidence of malfeasance resulting

from the officers' use of the in-town expense allowance. After evaluating the testimony of many officers, however, the district court concluded that the circumstantial evidence was outweighed by the officers' plausible explanations for not documenting their expenses: that it was simply too much trouble to keep track of every expense and that they preferred to pay tax on their reimbursements rather than take the time to prepare an expense report. Moreover, several officers presented expense reports for months in which they did document their expenses; the reports appeared to show at least $500 of legitimate expenses for each month for which they submitted receipts. Because Noble offered no direct rebuttal evidence of wrongdoing and because the circumstantial evidence he offered inadequately rebutted the officers' testimony and evidence, the district court dismissed the section 501 claim. *See Noble v. Sombrotto* (*Sombrotto III*), 84 F. Supp. 3d 11, 30 (D.D.C. 2015) ("[D]irect evidence rebuts [Noble's] circumstantial evidence and shows that [the individual defendants] used their in-town allowances for union-related business.").

On the section 201 claim, Noble greatly expanded his document request on remand, insisting that he needed access to "the entirety" of the Union's records in order to complete his investigation. The district court rejected that request as well as a narrower request for all documents related to an alleged Union account in a Minneapolis bank. The court found that Noble had given no explanation of how a review of documents related to such an account would help him "verify [the Union's] report" to the Secretary of Labor, as required by section 201. 29 U.S.C. § 431(c). Accordingly, the district court again dismissed the section 201 claim.

Noble timely appealed both of the district court's orders on remand; we have jurisdiction of his appeal under 28 U.S.C. § 1291.

## II. Analysis

We review the district court's interpretation of the LMRDA *de novo*. *Sombrotto II*, 525 F.3d at 1235. We defer to "an interpretation of a union constitution rendered by officials of a labor organization . . . unless the court finds the interpretation was unreasonable or made in bad faith." *Id.* at 1236 (quoting *Monzillo v. Biller*, 735 F.2d 1456, 1458 (D.C. Cir. 1984)). We review the district court's factual findings for clear error.

## A. Section 501 Claim

Section 501 of the LMRDA imposes a fiduciary duty on all union officers. 29 U.S.C. § 501(a); *see George v. Local 639, Int'l Brotherhood of Teamsters*, 98 F.3d 1419, 1422 (D.C. Cir. 1996). A union-member plaintiff may recover damages and obtain injunctive relief based on a union officer's breach of his statutory duty. 29 U.S.C. § 501(b); *see George*, 98 F.3d at 1423.

Noble alleged that NALC officers violated their fiduciary duty by accepting in-town expense allowances without documenting the expenses for which they sought reimbursement. Although officers were encouraged to document their expenses by submitting receipts along with their reimbursement requests, they often did not, notwithstanding undocumented reimbursement was taxed as regular income. According to Noble, the officers used the $500 per month allowance to increase their salaries by routinely requesting "reimbursement" for personal or nonexistent expenses. Noble argued that this practice is

forbidden not only by the fiduciary duty imposed by section 501 but also by the Union constitution, which specifies the amount of officers' salaries and allows officers discretion only with regard to "benefits."

Earlier in this case we concluded that the district court had "relied on a clearly erroneous factual finding" in dismissing this section 501 claim. Although the district court had decided that "Noble produced '[n]o evidence' that officers had used the allowance for 'purely personal reasons, unrelated to union business,'" *we* found "[t]o the contrary, Noble presented ample circumstantial evidence that officers were using the allowance for personal use." *Sombrotto II*, 525 F.3d at 1236 (quoting *Sombrotto I*, 2006 WL 2708796 at *9). As Noble argued, "each officer could easily have avoided a substantial additional tax liability by keeping and submitting receipts for legitimate union-related expenses he or she incurred each month" but most officers rarely did so. *Id.* On remand the district court concluded that both the officers' evidence and supplemental briefing on the expense-reimbursement policy adequately rebutted Noble's circumstantial evidence of impropriety. *Sombrotto III*, 84 F. Supp. 3d at 29 ("Against this circumstantial case, the Court must weigh the evidence presented by the individual defendants in support of their contention that they did not misuse the in-town allowances. At least with respect to [the remaining individual defendants], direct evidence rebuts this circumstantial evidence . . . .").

Noble nonetheless continues to press the argument he has been making since 2008; and the defendants respond that the reimbursement policy is authorized by the Union constitution. The Union executive council has repeatedly reaffirmed the defendants' interpretation of the NALC constitution, JA124 (1975 council resolution), JA125–26

(1977 council resolution), JA127–28 (1980 council resolution), as have overwhelming majorities of the Union's national convention, JA223–24 (minutes of 1996 convention).

This brings us back to where we were a decade ago: the resolution of Noble's section 501 claim turns on the interpretation of the NALC constitution and Noble has given us no reason to second guess the Union's own interpretation thereof. *See Noble II*, 525 F.3d at 1242 (Kavanaugh, J., concurring in part and dissenting in part) ("Our precedents and the statutory text and structure establish a basic principle of judicial restraint in these cases. . . . [W]e afford even greater deference to union officials when the union convention has approved the officers' interpretation of the union constitution."). We believe, then, that the district court correctly determined on remand that the evidence supported the defendants' assertion that they simply preferred to pay taxes on their expense allowances rather than document their expenditures. Their choice may not be a model of administrative efficiency but it violates neither the Union constitution nor the LMRDA.

Moreover, Noble's "bad faith" argument does not save his section 501 claim. In *Sombrotto II* and in *United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997), we distinguished between a good-faith interpretation of a union constitution, which is entitled to judicial deference, and a bad-faith interpretation, which is not. Noble misreads *DeFries*, arguing that a union officer necessarily breaches his fiduciary duty if he *acts* in bad faith notwithstanding his good-faith *interpretation* of his constitutional authority. Noble Br. 48. The argument fails. Noble might have prevailed on remand by establishing either (1) that a Union

officer had—somehow in bad faith—interpreted the NALC constitution as authorizing the reimbursement policy or (2) that an officer had embezzled Union funds by receiving reimbursements for nonexistent expenses. The district court correctly concluded that Noble had supported neither of these theories. *See Sombrotto III*, 84 F. Supp. 3d at 29 ("At most, then, the in-town allowances had been concealed by a *prior* [Union] administration . . . . This differs enough from *DeFries* that the Court cannot say that these individual defendants . . . sought to conceal the existence of the challenged payments."); *id.* at 30 ("[T]he existence of a significant record of receipts describing the types of union-related expenses contemplated by the Resolution . . . bolsters the conclusion that any unreceipted portion of these defendants' allowances was not used for personal gain.").

### B. Section 201 Claim

Noble's section 201 claim involves his requests for Union records that he alleges have been wrongfully withheld over the course of this litigation, contrary to the Union's duty to disclose to Noble any records "necessary to verify" the Union's annual filing with the Secretary of the U.S. Department of Labor. 29 U.S.C. § 431(c). Section 201 requires that a union member show "just cause" to examine union records and that the records requested be "necessary to verify" the union's LM-2 annual report to the Labor Secretary. *Id.* The just cause standard is not onerous: as the Ninth Circuit has put it, "it is enough if a reasonable union member would be put to further inquiry." *Fruit & Vegetable Packers & Warehousemen Local 760 v. Morley*, 378 F.2d 738, 744 (9th Cir. 1967). The burden of showing just cause is on the union member, *Mallick v. Int'l Bhd. of Elec. Workers*, 749 F.2d 771, 784 (D.C. Cir. 1984), and there must

be a connection between the records requested and the information included in the union's annual report, *id.* at 781.

In the decade following our 2008 remand, Noble has remained unable to identify with specificity the documents he has requested but been denied. Indeed, eight years elapsed before Noble requested "the entirety" of NALC's records. *Noble v. Sombrotto* (*Sombrotto IV*), 233 F. Supp. 3d 123, 128 (D.D.C. 2017). Noble contended in district court that only by reviewing "the entirety" of the Union's records could he show the existence of an allegedly illicit bank account he believed the Union's Minneapolis chapter had opened with Union funds, or at least establish that the account's funds were not included in the Union's annual report. *Id.* at 134 ("Mr. Noble admits that he does not know and, consequently, is unable to explain how examination of the Minneapolis bank account records—separate and apart from the *entirety* of the NALC's records—will assist him in verifying that the bank account funds were reported in the NALC's LM-2 Reports."). But by the sheer scope of the request—tantamount to a "wholesale random audit," *id.* (quoting *Bembry v. N.Y. Metro Postal Union*, No. 08-civ-2369, 2009 WL 690245, at *7 (S.D.N.Y. Mar. 12, 2009))—Noble in effect conceded that he could not identify the *specific* documents, or even categories of documents, "necessary to verify" the Union's annual report, 29 U.S.C. § 431(c).

*Mallick*, our leading section 201 case, is plainly distinguishable. In *Mallick*, the plaintiff believed, after reading his union's annual report, "that the IBEW defends union democracy suits . . . without regard to costs or to the interests of the members, simply to discourage members from bringing such lawsuits." 749 F.2d at 776. Mallick then set out to determine whether what looked like a sharp increase in union

expenditures was an "unusual but essentially random fluctuation" or "a very sharp increase in actual legal costs, possibly caused by payments in a single major litigation." *Id.* Mallick suspected the latter: the union had recently settled, on confidential terms, a lawsuit brought by a fellow member. *Id.* at 774.

There was no suggestion of illegality in *Mallick*—the plaintiff simply disagreed with the union's legal strategy. The dispute involved whether he was entitled to the union records regarding its spending on litigation in view of the fact that his request was triggered by his disagreement about legal strategy, rather than by any alleged discrepancy in the LM-2 report. The district court ruled for the union because Mallick had not shown that the annual report was "untruthful, inaccurate, or incomplete." *Id.* We concluded that Mallick need not make that showing and that section 201 requires only a "connection . . . between the report and the underlying records." *Id.* at 781. We left for another day whether section 201 "simply defines the records subject to examination, or imposes a requirement that the union member actually seek to verify the LM-2 reports"— it sufficed that Mallick had "pointed to a sudden, apparently significant, and unexplained change in an item on his union's LM-2 report." *Id.*

Unlike Mallick, however, Noble has made no argument on appeal to connect his document requests to the Union's LM-2 submissions except to reference the general connection between, for example, bank records and financial reports. *See* Noble Br. 35 ("[Noble's] concerns deal directly with how the union is handling union funds, which ultimately will or should be reflected in the union LM-2 Reports . . . ."). But records relating to one bank account, standing alone, would be of minimal use in "verify[ing]" the aggregate numbers required for the LM-2 report. 29 U.S.C. § 431(c). The court's reliance

on Noble's unsubstantiated suspicion about one bank account would convert the information required by section 201 into the "wholesale random audit" the district court correctly rejected. *Sombrotto IV*, 233 F. Supp. 3d at 134 ("Mr. Noble's inability to articulate how the bank records—separate and apart from the entirety of the NALC's records—could help him verify the NALC's LM-2 Reports reveals his crusade to undertake an impermissible 'wholesale random audit' of the NALC's records.").

Over the 23 years of this litigation, Noble has failed to adduce any evidence of wrongdoing by the defendants. Aside from precatory invocations of the LMRDA's purpose, Noble has proffered nothing that "warrant[s] a judicial override of the union's overwhelming approval of the officers' interpretation" of the Union's constitution, *Sombrotto II*, 525 F.3d at 1244 (Kavanaugh, J., concurring in part and dissenting in part), and, thus, his section 501 claim is without merit. In addition, because he has failed to show just cause for his section 201 document request, the Union and, ultimately, the district court, reasonably rejected it.

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*