# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 29, 2022      Decided March 24, 2023

No. 22-5089

PRAIRIE BAND POTAWATOMI NATION AND MICCOSUKEE TRIBE
OF INDIANS OF FLORIDA,
APPELLANTS

SHAWNEE TRIBE,
APPELLEE

v.

JANET L. YELLEN, IN HER OFFICIAL CAPACITY AS SECRETARY
OF THE UNITED STATES DEPARTMENT OF THE TREASURY, ET
AL.,
APPELLEES

———

Consolidated with 22-5090

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:20-cv-01999)
(No. 1:20-cv-02792)
(No. 1:21-cv-00012)

———

*James P. Blenk* and *George B. Abney* argued the causes for appellants. With them on the briefs were *Daniel G. Jarcho, Jean E. Richmann, Carol E. Heckman,* and *Michael G. Rossetti.*

*Adam C. Jed*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Daniel Tenny*, Attorney.

Before: CHILDS, *Circuit Judge*, and ROGERS, *Senior Circuit Judge*.[*]

Opinion for the Court by Senior Circuit Judge Rogers.

ROGERS, *Senior Circuit Judge*: Two American Indian tribes – Miccosukee Tribe of Indians of Florida and Prairie Band Potawatomi Nation – challenged as arbitrary and capricious the Secretary of the Treasury's 2020 and 2021 Distributions of appropriations for relief from the COVID-19 pandemic. The district court granted summary judgment to the Secretary. The Tribes appeal only the 2021 Distribution.

**I.**

The Coronavirus Aid, Relief, and Economic Security Act ("the Act"), effective March 27, 2020, directed the Secretary of the Treasury to allocate COVID-19 relief funds to tribal governments "based on increased expenditures." 42 U.S.C. § 801(c)(7). The Secretary was to make payments within 30 days of enactment, *id.* § 801(b)(1), and therefore needed to devise a

---

[*] Senior Circuit Judge Silberman was a member of the panel before his death on October 2, 2022. Judges Rogers and Childs have acted as a quorum in this opinion. *See* 28 U.S.C. § 46(d).

method that would approximate *future* expenditures, *id.* §§ 801(b)(1), 801(c)(7). Where Congress directs an agency to act "based on" an identified factor, that factor must be a "starting point" and "primary basis" but it need not be the "sole basis" for action. *United Mine Workers v. Mine Safety & Health Admin.*, 626 F.3d 84, 92 (D.C. Cir. 2010).

In May 2020, the Secretary announced that sixty percent of the funds would be distributed according to tribal population, using HUD data. U.S. Dep't of Treasury, Coronavirus Relief Fund Allocations to Tribal Governments 2 (May 5, 2020) ("2020 Announcement"). Although various Tribes challenged the distribution unsuccessfully, on appeal this court determined that the Secretary's discretion is "limited to 'determin[ing]' a method for allocating funds that is 'based on increased expenditures' and that is 'appropriate to ensure that all amounts available . . . are distributed.'" *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 100 (D.C. Cir. 2021) ("*Shawnee I*") (alteration in original) (quoting 42 U.S.C. § 801 (c)(7)). Concluding that the Shawnee Tribe was likely to succeed on its challenge to the HUD data as arbitrary and capricious, the court remanded to the district court. That court thereafter issued a preliminary injunction barring the Secretary from distributing $12 million of the remaining COVID-19 funds appropriated to tribal governments. Order (Jan. 14, 2021).

The Secretary proposed an additional allocation in 2021 from approximately $530 million designated for Alaska Native Corporations ("ANCs") that had not been distributed pending litigation regarding the ANCs' eligibility. U.S. Dep't of Treasury, Coronavirus Relief Fund Allocations to Tribal Governments 2 (Apr. 30, 2021) ("2021 Announcement"). Only those Tribes most undercounted in the 2020 Distribution would receive additional funds. *Id.* The Secretary ranked each Tribe by the percentage the HUD data underestimated its

enrolled population, not by the number of uncounted enrolled members. *Id.* at 3. The Secretary used enrollment data collected by the Bureau of Indian Affairs and otherwise solicited enrollment data and, in the absence of either source, the Secretary used enrollment data based on the HUD data. *Id.* Allocations of the remaining undistributed funds were to be limited to the fifteen percent of Tribes with the greatest percentage of uncounted enrolled population. *Id.* The amount those Tribes received was determined by a "Phaseout": the greater the percentage undercounted, the greater percentage awarded of their "shortfall," i.e., the difference between the amount a Tribe would have received had enrollment data been used and the amount a Tribe received in the 2020 Distribution. *Id.*

Miccosukee and Prairie Band filed amended complaints challenging the 2020 and 2021 Distributions, while Shawnee abandoned its legal challenges. *Shawnee Tribe v. Yellen*, 583 F. Supp. 3d 36, 40-41 (D.D.C. 2022). The district court granted summary judgment to the Secretary. *Id.* at 41. Miccosukee and Prairie Band now challenge only the Secretary's "decision to implement the Phaseout" instead of awarding each Tribe receiving a 2021 Distribution the entirety of its shortfall.

## II.

Miccosukee and Prairie Band contend that the 2021 Distribution was arbitrary and capricious because it was unsupported by the administrative record, inconsistent with the Act and with the Secretary's earlier approach, and treated similarly situated parties dissimilarly. As explained in Part A, Miccosukee's claim is moot. As explained in Part B, Prairie Band's claim must be remanded to the Secretary for further explanation before the court could conclude the choice was a

reasonable exercise of broad discretionary authority supported by the record.

**A.**

The doctrine of mootness "addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit.'" *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) (alteration in original) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)). That "occurs when . . . the court can provide no effective remedy because a party has already 'obtained all the relief that [it] sought.'" *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (alteration in original) (quoting *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C. Cir. 1984)).

In 2022, the Secretary offered additional funding to Tribes affected by the error in the 2021 Distribution. Miccosukee was affected by that error while Prairie Band was not. Appellee's Suppl. Br. 3 n* (Sept. 12, 2022). Some Tribes assigned HUD populations of zero received the entirety of their shortfall in the 2021 Distribution while others did not. The 2022 Distribution corrected that error. *See id.* The Secretary explained that Miccosukee "has been offered and has accepted an additional payment such that Miccosukee has been given funds as if the methodology had used enrollment as the sole measure of population for all federally recognized tribes." *Id.* at 3.

Miccosukee does not contest this representation. Its counsel acknowledged that Miccosukee had received the 2022 Distribution. Oral Arg. Rec. 31:15-23. Instead Miccosukee maintains its claim is not moot because it still seeks to be treated on par with Tribes that received approximately $3,000 per member in the 2020 Distribution (as reflected in the amount

of the *Shawnee I* injunction). *Id.* 31:01-33:46. But Miccosukee stated that "[t]he instant appeal solely addresses Treasury's decision to implement the Phaseout." Appellants' Br. 15. In that regard it sought the difference between what it received and what it would have received had tribal enrollment been used as the measure of population. *Id.* at 32. That amount it has now received. Miccosukee still maintains that its claim is not moot because it has been unable to verify that it has been treated on par with other Tribes assigned HUD populations of zero. Appellants' Reply Br. 4-5. These representations are inconsistent with its position that the court can direct an award of the entirety of each Tribe's shortfall because the Secretary has all of the relevant data to do so. Appellants' Br. 32. Although Miccosukee notes the 2022 Distribution is absent from the administrative record, Appellants' Reply Br. 7-8 n.5, "evidence demonstrating mootness will almost necessarily post-date the administrative record in any given case," *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 2022 WL 1657013 at \*4 (D.D.C. May 24, 2022). Miccosukee, in seeking more than it requested to be made whole as a result of undercounting by HUD data, fails to show factual error therein.

**B.**

A reviewing court is "to assess only whether the [challenged agency] decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Because agencies generally have "wide discretion to determine where to draw administrative lines," *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1085 (D.C. Cir. 2002) (internal quotation marks and citation omitted), courts are especially deferential where agencies must make predictive

judgments with limited information, *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1160 (2021). Still, the Secretary "must cogently explain why . . . discretion [was exercised] in a given manner," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983), such that the chosen "path may reasonably be discerned," *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). As a general matter the explanation must be based on the administrative record and not provided as a *post-hoc* rationalization. *See Overton Park*, 401 U.S. at 419.

The requirement that the Secretary allocate funds "based on increased expenditures," 42 U.S.C. § 801(c)(7), does not require a population-based allocation or a *per capita* rate, as Prairie Band maintains, Appellants' Br. 24. Indeed, Prairie Band acknowledges that the Secretary acted within the broad discretion delegated by Congress in allocating additional COVID-19 funds only to the fifteen percent of Tribes with the greatest share of enrolled population undercounted by HUD's data. *See id*.

The Secretary used HUD population data as one way to approximate increased expenditures. *Shawnee I*, 984 F.3d at 97. It is uncontested that some stand-in for increased expenditures was necessary as the Secretary explained in the 2020 Announcement. It is also uncontested that population is a reasonable stand-in for increased expenditures. Failures of the stand-in due to undercounting population are failures to allocate based on increased expenditures and redressing those failures is to allocate based on increased expenditures. HUD data significantly undercounted some Tribes. *Shawnee I*, 984 F.3d at 97. The 2021 Distribution was designed to compensate Tribes based how much their members had been undercounted

so that the Secretary's total allocations would more closely approximate increased expenditures.  2021 Announcement 2.

The Secretary acknowledged two limitations on designing the methodology: (1) The tight statutory time limit, 42 U.S.C. § 801(b)(1), meant the methodology could at best only estimate Tribes' funding needs because the "funding needs of Tribes cannot be determined with precision" when making a prediction about future expenditures, 2021 Announcement 3, and (2) Only limited COVID-19 funds remained undistributed.  The undistributed funds had been allocated to ANCs in view of the great need identified during agency consultations, *see id.*  The Secretary explained why limited funds required prioritization of "additional payments when there is a substantial disparity between the Tribe's [HUD] count and its tribal enrollment." *Id.* at 2.

Even so, the Secretary has not explained why "substantial disparity" was measured by the degree the HUD data underestimated enrollment rather than number of uncounted enrolled members, nor the Distribution methodology in relation to the statutory mandate to allocate funds "based on increased expenditures," 42 U.S.C. § 801(c)(7).  Across the 2020 and 2021 Distributions, a total of $5.3 million was allocated to Shawnee for its 3,021 enrolled members. *Shawnee Tribe*, 583 F. Supp. 3d at 53.  Prairie Band, by contrast, was allocated approximately $3.3 million across the 2020 and 2021 Distributions for its 4,561 enrolled members. *Id.*  The district court observed: "Shawnee received around $2 million more with around 1,500 fewer enrolled members: '40% *more* funds to Shawnee [than Prairie Band] for an enrolled population that is 33% *lower*.'" *Id.* (quoting Pls.' Second Mot. Summ. J. at 15) (alteration in original).  This resulted in a per enrolled member distribution of approximately $1,754 for Shawnee and approximately $724 for Prairie Band. *See id.*  Absent further

explanation, this "treat[s] similar situations in dissimilar ways" contrary to the principles of reasoned decisionmaking. *Garrett v. FCC*, 513 F.2d 1056, 1060 (D.C. Cir. 1975) (internal citations omitted). An "agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005). "It is clear . . . not only that more than enumeration of factual differences between cases is required, but also that the [Secretary] must explain their relevance to the purposes of the legislation it administers." *Garrett*, 513 F.2d at 1060 (alteration and internal citation omitted).

On remand, the Secretary must explain the decision decided. To the extent the 2021 Distribution would treat some Tribes assigned HUD populations of zero differently, the Secretary corrected the error. Only Miccosukee had standing to challenge the error and its claim is moot. To the extent Prairie Band's objection to the Secretary's explanation is that the administrative record would *also* support awarding Tribes the entirety of the shortfall, the court has no occasion to "substitute its judgment for that of the [Secretary]," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *State Farm*, 463 U.S. at 43). Congress assigned "that difficult decision" to the Secretary. *Regents of the Univ. of Cal.*, 140 S. Ct. at 1914. The Secretary must sufficiently explain the choice made. Although the court does "not conclude that the agency is incapable of adducing sufficient evidence reasonably to support its decision," the court "cannot, consistently with [its] limited role in reviewing agency decisions . . . reach the reasoned decision [itself]; that task remains to be done by the agency." *Am. Min. Cong. v. EPA*, 907 F.2d 1179, 1191 (D.C. Cir. 1990).

Accordingly, the court dismisses Miccosukee's challenge as moot and reverses the district court's grant of summary

judgment to the Secretary with instructions to remand Prairie Band's challenge to the 2021 Distribution to the Secretary for further explanation.